MULLIGAN *v.* PAYNE.

5-2246                                    341 S. W. 2d 53

Opinion delivered December 19, 1960.

*Johnston & Rowell,* for appellant.

*Brazil & Brazil,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal results from a decree of the Conway Chancery Court wherein the complaint of appellants was dismissed for want of equity, and title to certain lands was confirmed in appellee, Darby Payne. Mr. and Mrs. T. B. Robbins of Center Ridge were the owners of approximately 195 1/2 acres of land in Conway County for a number of years prior to November 17, 1954. An additional 80 acres was also

owned by Mrs. Robbins, but this latter acreage is not involved in this appeal.  On November 17, Mr. and Mrs. Robbins conveyed, by warranty deed, the 195 1/2 acres to their daughter, Darby Payne, who was living with her parents at the time they moved to the property in 1930.  Mrs. Payne married in October, 1931, and she and her husband continued to live on the premises.  In 1938, Mrs. Payne married a second time, moved away for a short while, but subsequently returned, and lived with her parents until their deaths.  The deed from the parents to the daughter recites:

"This land is being conveyed to the said Darby Payne, our daughter, for and in consideration of her living with us and taking care of us the rest of our lives since we both are above the age of 84 years of age and need someone to care for our physical needs. The said Darby Payne is not able to care for us financially but can care for us otherwise.  It is further agreed and understood that we can live on the said land the remainder of our lives."

In 1956, Mr. Robbins, 92 years of age, died, and in 1957, Mrs. Robbins died at 87 years of age.  Appellants, Mrs. L. A. Mulligan, Mrs. W. E. (Della) Maxey, Sr., Hervey Robbins, and Berneice Richey, are also children of Mr. and Mrs. Robbins.  Suit was instituted by these children against their sister, Darby Payne, in which they alleged that in 1954, their father and mother desired to become welfare recipients, and to receive monthly checks from the Welfare Department as grants to aged people, but that their parents owned too much land and cattle to qualify as needy persons under the regulations of the State Welfare Department; that persons owning more than 80 acres of land at that time were ineligible for welfare payments.  It is then alleged that Mr. and Mrs. Robbins "conceived a sham deed to divest themselves of the ownership of all lands in excess of 80 acres  *  *  *," and that solely for the purpose of coming within the eligibility requirements for welfare payments, the parents conveyed the 195 1/2 acres to appellee; that it was necessary that title be divested without the Robbinses

receiving any substantial consideration (since that would likewise make them ineligible for benefits), and the clause in the deed, heretofore set out, was inserted for that purpose. The complaint alleges that all the parties knew the purpose of the deed, and that it was understood by all that the property was to be divided equally among the children upon the death of the parents. It is further alleged that, still for the purpose of meeting welfare requirements, the Robbinses conveyed to their daughter, Berneice Richey, all of their cattle; but that Mrs. Richey did not actually own the cattle, and though checks for the milk were directed to her, the money was actually turned over to the parents. The complaint further asserted that Mrs. Payne "now contends that she is the sole and exclusive owner of the 195 1/2 acres" but "in truth and fact, the said Darby Payne holds naked legal title to the said 195 1/2 acres as the trustee for all the plaintiffs herein", and the prayer was that the court "impress an implied or constructive trust" upon the lands, and "find that the said Darby Payne holds said legal title as trustee for the use and benefit of all the children and heirs at law of the said T. B. Robbins and Ida Ann Robbins  *  *  *." From the court's decree dismissing the complaint and quieting title in appellee, appellants bring this appeal.

The issue in this case is purely one of fact; there is no dispute as to the legal principle involved. It is simply a matter of whether appellants met the quantum of proof necessary and essential to the establishment of their contention. Nine witnesses, including three of the parties, were called to the stand on behalf of appellants; two others were grandchildren, one a husband of the granddaughter, and one a niece of the deceased Robbinses. The testimony of another, Arlie Bryant, strongly favored appellee. Seven witnesses, including the appellee, and Juanita Bailey, a daughter of appellant Berneice Richey, testified in her behalf.

Appellants, through their testimony, endeavored to show that the deceased parents desired to obtain welfare payments, and executed the conveyance to appellee sim-

ply as a means of getting the title out of themselves. Mrs. Jewell Gordon, daughter of Mrs. Mulligan, her husband, Olen Gordon, and Ruth Morrow, the niece, all testified that Mr. Robbins told them that the land had been deeded to Darby in order that they (the parents) could qualify for welfare benefits, and that appellee was to divide the land among all the children following the death of Mr. and Mrs. Robbins. Mrs. Mulligan testified that Darby told her, following the death of her father, and in the presence of her mother, that she would "turn the deed back—set the deed aside, and give each child his part." Hervey Robbins, a son, testified that "my Mother said she made most of the land over to Darby, and she knew Darby would divide the land up after their death", though he said Darby had never made any such promise to him. Mrs. Maxey, a daughter, testified that appellee stated the deed was "just for a sham to get relief for them."

Arlie Bryant, though called by appellants, testified that he took the Robbinses to Edwin Bird, a Notary Public, for the purpose of executing a deed to Darby, and that this service was rendered at the request of the grantors. He stated that Mr. and Mrs. Robbins told him that they wanted Darby to have the land, and that Mrs. Robbins made this statement in the presence of his wife and Berneice Richey.[1] According to the witness, at the time Mr. and Mrs. Robbins signed the deed, the father stated, in response to a query from the Notary Public as to whether the old people knew what they were doing:

"Yes, sir, that's why we come up here for is to deed it to her, that we feel that she ought to have it, and she is entitled to it by being there and never has been away from home, and stayed with us, and I don't know what we would have done if it hadn't been for her staying there."

Bryant also assisted the Robbinses in getting on the welfare rolls. Counsel endeavored to show that Bryant

---

[1] Mrs. Richey did not testify in the case.

had made prior statements inconsistent with his testimony. According to Joe Brinkley, a grandson, he had heard Bryant state that the welfare turned the Robbinses down because they owned too much land, and he (Bryant) had gone back to the old people, and talked to them about deeding all the property to Darby except 80 acres. Juis Carr, a merchant of Center Ridge, testified that Bryant had talked with him about getting Mr. and Mrs. Robbins on welfare, and that they owned too much land.

Several apparently disinterested witnesses testified on behalf of appellee. Audrey Atkinson and Mrs. Bryant both testified that Mr. and Mrs. Robbins stated that they wanted Darby to have the land. Atkinson testified that Mrs. Robbins had related to him in 1946 that she and her husband had been able to pay off an indebtedness to the Federal Land Bank with the help of Darby. Mrs. Audrey Atkinson testified that Mrs. Robbins had told her that the place was going to be deeded to Darby, so the latter would have a home. Edwin Bird, who prepared the deed and acknowledged same, stated that he asked Robbins if he knew what he was doing, and the latter stated that he did, and was deeding the property to Darby because she had been good to her parents, and stayed with and taken care of them. Ollie Moses testified that Mrs. Robbins had stated to the witness that she had the "place fixed just like she wanted it. Said Darby had a home now and wouldn't be rooted out." In addition, Juanita Bailey, daughter of Mrs. Richey, testified that her grandfather and grandmother had told her that they felt Darby should have the place. Appellee testified that her father had advised her, at the time a mortgage was given to the Federal Land Bank, that if she would work on the place and help her parents pay off the indebtedness, a deed or will would be executed, giving her the property. Some time later, she stated that her father said, "You know, I'm ninety-one years old, and nature teaches me that your Mother and I can't be here much longer. We've got to do something about this property"; that

they went to the house for dinner, and the mother agreed with the father that the property should be deeded to Darby. She testified that her mother or father never mentioned anything about appellee making a deed to the brother and sisters; she denied making any statements to anyone to the effect that the deed was executed only as a matter of getting the parents on welfare, and likewise denied that she had indicated to any of the heirs that the property would be divided among the children after the death of the parents.

We think it apparent that the proof on the part of appellants falls far short of meeting the burden required in this type of case. As stated in *Nelson* v. *Wood,* 199 Ark. 1019, 137 S. W. 2d 929:

"The general rule, as well as the established rule in this state, seems to be well settled that in order for one to establish by parole either a resulting trust or constructive trust, the evidence must be 'full, clear and convincing', 'full, clear and conclusive', 'of so positive a character as to leave no doubt of the fact', and 'of such clearness and certainty of purpose as to leave no well founded doubt upon the subject.' These requirements run through a long line of cases from this Court."

Appellants insist that circumstances, such as the fact that the Robbinses began to draw welfare payments soon after executing the deed, establish the truth of their assertion. But, of course, there are also other circumstances in the case; for instance, the fact that appellee lived and worked with her parents for many years, while the other children were away, and only returned for occasional visits. For that matter, it could well be that the desire for welfare payments contributed to the Robbinses' decision to make the conveyance at that particular time, rather than by later deed or by will. At any rate, irrespective of other considerations or contributing factors, the testimony is rather potent that the father and mother desired that Darby have the property. Appellants complain that the Chancellor paid too much attention to the testimony of the Notary Public; there is nothing in the record which indicates that

he paid particular attention to this evidence *because Bird was a Notary Public,* but it may well be that the testimony of the disinterested witnesses (of which Bird was one) carried considerable weight with the Court in reaching its decision. While, of course, parties are perfectly competent witnesses, and decisions may well be based upon the evidence of those interested in the litigation, still, the testimony of those without pecuniary interest, or apparent bias toward any party, would normally be noted and considered in the deliberations of a Chancellor.

Be that as it may, we are of the opinion, and hold, that appellants have not shown by clear and convincing evidence, that there was an intention on the part of the parents, in deeding the property to appellee, to create a trust for the benefit of all the children, *i. e.,* no resulting trust was established; nor is it shown by the required quantum of proof that the circumstances surrounding the execution of the deed, gave rise to a constructive trust.[2]

Decree affirmed.

---

[2] Black's Law Dictionary, 4th Edition, defines Resulting trust as follows: "One that arises by implication of law, or by the operation and construction of equity, and which is established as consonant to the presumed intention of the parties as gathered from the nature of the transaction. It arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title." Constructive trust is defined as: "A trust raised by construction of law, or arising by operation of law, as distinguished from an express trust. Wherever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who in equity are entitled to the beneficial enjoyment."