**In re CUPPLES FARMS, A Partnership, Debtor.**

**FEDERAL LAND BANK OF ST. LOUIS, Plaintiff,**

**v.**

**CUPPLES FARMS, a Partnership, Defendant.**

**CUPPLES FARMS, a Partnership, Plaintiff,**

**v.**

**FEDERAL LAND BANK OF ST. LOUIS, Defendant.**

**Bankruptcy No. 90–20056.**
**Adv. No. 90–2017.**

United States Bankruptcy Court, E.D. Arkansas, Helena Division.

March 5, 1991.

Roy C. Lewellen, Marianna, Ark., Keith I. Billingsley, Little Rock, Ark., for debtor.

William A. Waddell, Jr., Little Rock, Ark., for Federal Land Bank, for defendant.

A.L. Tenney, N. Little Rock, Ark., Trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On May 17, 1990, Cupples Farms filed a voluntary petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. On July 10, 1990, the Court held a hearing on a Motion for Rehearing, the debtor's latest effort to prevent foreclosure of certain real property located in Crittenden County and St. Francis County, Arkansas. The following shall constitute the Court's findings of facts and conclusions of law in lieu of the Court's remarks following the July 10, 1990, hearing.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), and the Court has jurisdiction to enter a final judgment.

Cupples Farms, the debtor in this case, is a partnership comprised of Horace E. Cupples, Jr. (H.E.) and Jacob W. Cupples

(J.W.).[1] Cupples Brothers is also a partnership comprised of H.E. and J.W. The real property in question consists of 529.63 acres of farmland in Crittenden County, Arkansas, and 320 acres of farmland in St. Francis County, Arkansas. The property was purchased in 1974 by Cupples Brothers, which subsequently mortgaged the property to the Federal Land Bank of St. Louis (FLB) to secure repayment of two promissory notes.

On December 29, 1987, FLB obtained a judgment in the amount of $772,981.70, plus interest and attorney's fees, against Cupples Brothers and others covering the real property mortgaged by Cupples Brothers to FLB. FLB has made four attempts to schedule foreclosure sales of the property. The first two scheduled sales were aborted by Cupples Brothers' obtaining of stays from the United States District Court and the Eighth Circuit Court of Appeals pending appeals. Both appeals were decided adversely to Cupples Brothers. The third scheduled sale was stayed by the filing of a bankruptcy petition by Cupples Brothers on January 30, 1990. By order entered May 3, 1990, Cupples Brothers voluntarily dismissed its bankruptcy case.

On May 4, 1990, FLB scheduled the fourth sale of the real property for June 14, 1990. Cupples Farms' chapter 12 petition was filed on May 17, 1990. On May 21, 1990, FLB filed a motion for relief from the automatic stay to proceed with the foreclosure sale, asserting, among other things, that the property was owned by Cupples Brothers and thus was not property of the bankruptcy estate of the debtor, Cupples Farms. On June 11, 1990, a hearing was held, and, on June 13, 1990, the Court entered an order specifically finding that the property was not property of the estate of Cupples Farms and that the stay did not apply to the foreclosure sale.

On June 13, 1990, the debtor filed a Motion for Rehearing, asking the Court to reconsider its order finding the stay inapplicable. The Court held a hearing on the motion on June 13, 1990, and, because of insufficient notice to FLB counsel, the hearing was continued to July 10, 1990. The Court treated the motion for rehearing as a motion for new trial or amendment of judgment under Bankruptcy Rule 9023, which incorporates Fed.R.Civ.P. 59.

On June 14, 1990, the day scheduled for the foreclosure sale, the debtor filed a complaint for temporary restraining order and injunctive relief. The Court denied the request for a temporary restraining order and set a hearing on the preliminary injunction for July 10, 1990.[2]

At each hearing, the debtor has presented essentially the same argument: that the debtor, Cupples Farms, consists of the same majority partners as Cupples Brothers; that the debtor's partnership agreement contains an addendum signed by both partners whereby the debtor, Cupples Farms, assumed all outstanding indebtedness and assets of Cupples Brothers; that the debtor, Cupples Farms, has farmed the land in question for eight years; and that the Court should look beyond bare legal title and "do equity by imposing a constructive trust upon this property and find that Cupples Farms is the true equitable owner" of the land.

## FACTS

The evidence establishing the chain of title to the real property was confusing. The real property was purchased by Cup-

---

1. At the hearing on the motion for relief from stay, H.E. testified that J.W. had recently died. H.E. testified that he thought that 80% of J.W.'s partnership interest in Cupples Farms had passed to him and 20% to H.E.'s two sons. The Cupples Farms partnership agreement provides that a surviving partner may purchase a deceased partner's partnership interest from the deceased partner's estate; however, there was no evidence that the procedure outlined in the partnership agreement was followed. Under Arkansas law, a partnership must consist of at least two partners. Ark.Code Ann. § 4-42-201(1) (1987). Since H.E. may be the sole surviving partner of Cupples Farms, the Court has serious doubts as to whether the entity of Cupples Farms continues to exist for purposes of reorganization under the provisions of chapter 12.

2. The debtor concedes that the complaint for injunctive relief is moot since the property has been sold.

ples Brothers, a partnership formed in 1974 among H.E., J.W., Thomas E. Cupples, and Billy D. Cupples. Thomas E. Cupples withdrew from the partnership by agreement in 1976, and Billy D. Cupples died in 1977, leaving H.E. and J.W. as the only remaining partners of Cupples Brothers. Although the original partnership agreement provided that the partnership would terminate upon the death of a partner, the heirs of the deceased partner continued to farm with H.E. and J.W. in an informal partnership also known as Cupples Brothers.

On March 27, 1981, H.E. and J.W. executed a partnership agreement forming Cupples Farms. The partnership agreement contains an addendum, dated June 10, 1981 and signed by H.E. and J.W., individually, which purports to be for the purpose of "transferring and conveying all interest from Cupples Brothers to Cupples Farms." The addendum states that it is

intended to convey all interest in real estate and equipment to wit: Land owned as Cupples Brothers, a partnership in Sections 18, 19, 20, and 30, T5N R7E, being located in Crittenden Count [sic], Arkansas, and land owned as Cupples Brothers, a partnership, in Section 33, T4N R5E, located in St. Francis County, Arkansas.

The addendum is neither acknowledged nor recorded.

Some of the subsequent dealings with FLB and other governmental agencies were with Cupples Farms, some were with Cupples Brothers and some were with the partners individually. On April 30, 1981, after Cupples Farms was formed but before the addendum purportedly conveying the assets was executed, stock in the Forrest City Production Credit Association (PCA) was transferred from Cupples Brothers to Cupples Farms. On May 15, 1981, the PCA and FLB executed a subordination agreement stating that the real property mortgaged to FLB was owned by Cupples Brothers.

On March 8, 1982, approximately nine months after the addendum was executed, the heirs of the deceased partner of Cupples Brothers executed an agreement with-

drawing from the Cupples Brothers partnership and executed a quitclaim deed conveying a one-third interest in the subject real property to H.E. and J.W. The agreement stated that:

From March 8, 1982, the business of the partnership shall be carried on as a partnership between the continuing partners, Horace E. Cupples, Jr. and Jacob W. Cupples. The name "Cupples Brothers" shall be used by the partnership operated by the continuing partners.

On April 29 and May 7, 1982, Cupples Brothers executed documents with FLB for forbearance on the indebtedness. On July 2, 1982, Cupples Brothers executed a mortgage to the PCA.

On July 20, 1982, H.E. and J.W., as the sole partners of Cupples Brothers, executed a warranty deed conveying the real property in question to Cupples Brothers. The deed was properly recorded. H.E. testified that the deed was executed because "it was required by the PCA to make us a crop loan and they were taking a mortgage on the land and with all this going on they required that we do this to establish the title all in one name." July 10, 1990, Record at 31. Also on July 20, 1982, a mortgage to the Farmers Home Administration (FmHA) was executed by H.E. and J.W., on behalf of Cupples Farms; H.E. and J.W. on behalf of Cupples Brothers; and H.E., J.W. and H.E. Cupples, III, individually.

At the hearing on the motion for relief from stay, the parties stipulated as follows:

MR. WADDELL [FLB COUNSEL]: In that regard we also have a stipulation that legal title is in Cupples Brothers partnership. The two stipulations being, legal title or record title to the property at issue is in Cupples Brothers; and the second one, that there is no equity in this property.

. . . .

MR. BILLINGSLEY [DEBTOR'S COUNSEL]: ... We contend and agree with Mr. Waddell that the property, the record legal title to this property, is currently titled in Cupples Brothers, a partnership. The debtor in this bankruptcy is Cupples Farms, a partnership....

And we contend that the property which is the subject of this mortgage by the Federal Land Bank of St. Louis is owned by Cupples Farms equitably and is property to be considered of the estate under Section 541.

June 11, 1990, Record at 5–6. At the hearings on the motion for rehearing, the debtor continued to pursue the equitable argument as well as arguing that legal title was conveyed to Cupples Farms by the addendum.

The issue before the Court is whether the debtor, Cupples Farms, had a legal or equitable interest in the real property sufficient to be subject to the automatic stay which came into existence when Cupples Farms filed its bankruptcy petition.

### DISCUSSION

 Property of a bankruptcy estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). The parties clearly stipulated that legal title to the real property in question was held by the non-debtor Cupples Brothers. Oral stipulations made in open court are contractual in nature and are valid and binding. *Linehan v. Linehan*, 8 Ark.App. 177, 180–81, 649 S.W.2d 837, 839 (1983). No evidence was presented which would require the Court to set aside the stipulation that legal title resided in a nondebtor. However, if the debtor could establish that it held "equitable title" to the property, that interest would be estate property subject to the automatic stay.

 The nature and extent of the debtor's property interests are determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985). The parties do not contest the fact that the real property was originally acquired in the name of the Cupples Brothers partnership. *See* Ark.Code Ann. § 4–42–203(1)–(3) (1987). Therefore, legal title to the property could only be conveyed in the partnership name. *Id.* § 4–42–203(3). Where title to real property is in the name of a partnership, a conveyance executed by a partner individually "passes the equitable interest of the partnership." *Id.* § 4–42–302(2).

The addendum bears the signatures of H.E. and J.W., with no designation of their acting in the capacity of partners of Cupples Brothers. It does not bear the signatures of the heirs of the deceased partner, who had not yet withdrawn from the Cupples Brothers partnership. Therefore, disregarding any other defects in the document, the most that the addendum could convey was equitable title.

The Arkansas Supreme Court has defined equitable title as follows:

The rule appears to be well established that "an equitable title to land is a present right to the legal title," *Carmichael v. Delta Drilling Co.*, Tex.Civ. App., 243 S.W.2d 458, 460 [(1951)]. Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 1, Sec. 147, p. 199, defines an equitable estate as follows: "An equitable estate in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject matter, whether that be real or personal, the one legal, vested in one person, and recognized only by courts of law; the second equitable, vested in another person and recognized only by courts of equity ... the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow ... the remedies given to equitable owner are intended to preserve his estate, and to protect it both against the legal owner and against third persons."

*Hendriksen v. Cubage*, 228 Ark. 536, 539–40, 309 S.W.2d 306, 308–09 (1958).

 A constructive trust is an equitable remedy imposed by the court to confer on the true owner of property the equitable interest in the property superior to that of the owner of the legal title. *N.S. Garrott*, 772 F.2d at 467; *Tradax America, Inc. v. First Nat'l Bank (In re Howell Enterprises, Inc.)*, 105 B.R. 494, 497 (Bankr.E.D.Ark.1989), *aff'd*, No. H–C–89–86 (E.D.Ark. Apr. 16, 1990). To justify imposition of a constructive trust in real

property, the proof must be "full, clear and conclusive," or "of so positive a character as to leave no doubt of the fact" and "of such clearness and certainty of purpose as to leave no well-founded doubt upon the subject." *Mulligan v. Payne*, 232 Ark. 922, 927, 341 S.W.2d 53, 56 (1960); *Wilson v. Rodgers*, 250 Ark. 335, 337–38, 468 S.W.2d 739, 740–41 (1971); *Bramlett v. Selman*, 268 Ark. 457, 466, 597 S.W.2d 80, 85 (1980) (Fogleman, J., dissenting).

■ The debtor argues that the facts mandate a finding that Cupples Brothers, as the legal titleholder, held the property in trust for Cupples Farms, the true equitable owner of the property. The debtor asserts that it was the intent of the partners of Cupples Brothers to transfer all of its assets and indebtedness to Cupples Farms and carry on the partnership business as Cupples Farms. However, rather than clearly and conclusively supporting the debtor's contention that the property was held in trust for Cupples Farms, the evidence contradicts this intent. Following the purported conveyance, the partners continued to execute documents as Cupples Brothers. The most telling evidence was on July 20, 1982, when the partners of Cupples Brothers executed a warranty deed to Cupples Brothers. Even if the partners had intended a conveyance to Cupples Farms by the addendum, any interest, legal or equitable, was conveyed back to Cupples Brothers on July 20, 1982. The fact that the partners executed the warranty deed as partners of Cupples Brothers, rather than Cupples Farms, indicates that they thought title resided in Cupples Brothers, not in Cupples Farms.

Following the execution of the addendum purportedly conveying the property, it is apparent that the parties did not know what entity owned the property. At least one document contained the partners' signatures on behalf of both Cupples Farms and Cupples Brothers, as well as the partners individually. Some documents submitted by the partners were submitted in the name of Cupples Farms, some in Cupples Brothers.

There was some evidence that the operating entity was Cupples Farms. H.E. testified that Cupples Brothers had not filed a tax return since 1981 and that income from the farming operations was reported by Cupples Farms. Cupples Farms received two operating loans in its own name from PCA. However, this evidence merely establishes that an entity known as Cupples Farms existed and was involved in the farming operation. Nothing in Cupples Farms' partnership agreement would prevent another entity from holding title to the real property used in the farming operation and leasing it to Cupples Farms. In fact, the schedules filed by Cupples Brothers in its chapter 12 bankruptcy case stated that Cupples Brothers owned the real property and that Cupples Farms owned the farming equipment. Moreover, according to H.E.'s testimony, the land has not been farmed exclusively by Cupples Farms but was leased to other operating entities for at least two of the past ten years.

If FLB had known that equitable title was in Cupples Farms, it would not have continued to deal with Cupples Brothers. When FLB first began to deal with H.E. and J.W., it was in the form of Cupples Brothers. As matters became complicated, FLB took the precautionary step of requiring H.E. and J.W. to deed the property individually to the Cupples Brothers partnership. Even if FLB were aware of the formation of Cupples Farms, there was no reason for FLB to suspect that Cupples Farms had replaced Cupples Brothers as the party responsible for payment to FLB.

■ Also, the facts and procedural history reveal a pattern of abusive use of the judicial system to thwart the efforts of FLB. FLB obtained its judgment of foreclosure on December 29, 1987, and the debtor has succeeded in halting four scheduled sales over a period of thirty months. Title to the real property has been hopelessly confused and, if the debtor had been sincerely interested in attempting a chapter 12 reorganization, the partnerships could have been dissolved under state law and title to the land in question could have been conveyed by a conventional deed to a legal entity, which could then propose a plan to be addressed by creditors on its merits. Instead, title was left in its confused state and the debtor engaged in a cat-and-mouse game of serial bankruptcy filings. No pay-

ment has been made to FLB on Cupples Brothers' debt since 1980. Under the doctrine of "unclean hands," equity will not intervene on behalf of a party whose conduct in connection with the same matter has been unconscientious or unjust. *See Merchants & Planters Bank & Trust Co. v. Massey,* 302 Ark. 421, 424, 790 S.W.2d 889, 891 (1990); *Batesville Truck Line v. Martin,* 219 Ark. 603, 609–10, 243 S.W.2d 729, 732–33 (1951).

In conclusion, the debtor, Cupples Farms, did not have a sufficient equitable interest in the real property in question to prevent the relaxation of the automatic stay for FLB to proceed with foreclosure. Therefore, the debtor's motion for rehearing is denied.

IT IS SO ORDERED.