**Nora FAVORS, Appellant,**

v.

**Dennis FISHER, in his official capacity as Acting Administrator of the General Services Administration, Appellee.**

No. 93–1880.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided Jan. 12, 1994.

Samuel Iverson McHenry, Kansas City, MO, argued, for appellant.

Frances Elaine Reddis, Kansas City, MO, argued (Michael A. Jones and Frances Reddis, on the brief), for appellee.

Before McMILLIAN, FAGG and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Nora Favors appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri in favor of Dennis Fischer, in his official capacity as Administrator for the General Services Administration (GSA), on her claim of race discrimination. The district court held that Favors' employer, GSA, did not intentionally discriminate against her when it denied her a promotion from Procurement Clerk to Contract Specialist. *Favors v. Fischer*, Civ. No. 88-0665-CV-W-9 (W.D.Mo. Dec. 18, 1991). For reversal, Favors argues that the district court erred in concluding that she was not a victim of race discrimination. For the reasons discussed below, we affirm the judgment of the district court.

I. BACKGROUND

Favors began to work for GSA in February 1980 as a Shipment Clerk in the distribution management and operations branch of the Federal Supply Service. In 1984, she was reassigned to the position of Procurement Clerk. In April 1987, Favors applied for a position as a Contract Specialist. Following that application, she was selected as one of thirteen applicants qualified for the position. She was referred to Contract Specialist Supervisor Carl Harper for an interview, as were the other twelve qualified applicants. Two of the thirteen applicants were African–American, including Favors. Harper is a Caucasian male. Harper, as Contract Specialist Supervisor, conducted the interviews, and he asked each applicant the

---

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

same ten questions designed to test their knowledge of procurement regulations.

Raymond Wessling, a Caucasian male, was selected by Harper for the position of Contract Specialist. After selecting Wessling, Harper destroyed the ten questions he asked the applicants and the answers they gave. In May 1987, Favors filed an EEOC charge based upon her failure to receive the promotion. The EEOC charge included allegations of racial discrimination against Favors and other African–American employees.

In March 1988, Favors was given a grade of "successful" on her yearly performance evaluation. Between 1986 and 1988, financial awards were given to employees who received grades of "highly successful" or "outstanding" on their yearly performance evaluations. Favors' March 1988 grade of "successful" did not entitle her to a financial award. Her 1987 grade was "highly successful," which had entitled her to a financial award.

Favors filed suit in federal district court against Fischer, in his official capacity as Administrator for GSA, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that her failure to be promoted to Contract Specialist in 1987 was the result of race discrimination, and that Harper downgraded her 1988 performance evaluation from "highly successful" to "successful" in retaliation for filing her prior race discrimination charge. Following a two-day bench trial, the district court entered judgment in favor of GSA on Favors' discriminatory failure to promote claim and in favor of Favors on her retaliation claim. The district court awarded Favors $261.00 in damages on her retaliation claim. Favors appeals the district court's decision in favor of GSA on her discriminatory failure to promote claim.

## II. DISCUSSION

■ In *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (*Burdine*), the Supreme Court established the analytical framework for a Title VII disparate treatment case. First, Favors as the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. In establishing a prima facie case of discrimination, Favors must produce sufficient evidence to support an inference that GSA denied her a promotion to Contract Specialist for discriminatory reasons. *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir.1984). The elements necessary to establish a prima facie case vary according to the circumstances of the alleged discrimination. *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir.1992). In the promotion context, Favors can establish a prima facie case of prohibited racial discrimination by showing (1) she belongs to a racial minority, (2) she applied and was qualified for a job for which GSA was seeking applicants, (3) despite her qualifications, she was rejected, and (4) after her rejection, GSA filled or sought to fill the position with persons of Favors' qualifications. The district court found that Favors established a prima facie case based upon race. We agree. Favors, an African–American female, applied for and was qualified for the position of Contract Specialist; she was rejected and Wessling was selected.

■ Once the prima facie case is established, GSA as the employer bears the burden of articulating a legitimate, non-discriminatory reason for its adverse employment action. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The district court held that GSA articulated a legitimate, non-discriminatory reason for denying Favors the promotion. GSA asserted that the promotion decision was made solely on the basis of an objective, ten-question test, and that Wessling was promoted because he scored the highest on the test. Not promoting Favors because Wessling was more qualified is a legitimate, non-discriminatory reason and thus GSA rebutted Favors' prima facie case and satisfied the second step of the *Burdine* framework.

■ Once GSA articulates a legitimate, non-discriminatory reason for denying Favors the promotion, Favors has the "opportunity to demonstrate that the proffered reason was not the true reason for the employment decision," or, in other words, to prove pretext. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. In attempting to establish pretext, Favors relies on two points. First, Favors

claims that GSA changed its alleged legitimate, non-discriminatory reason for denying her the promotion. *See Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1101 (8th Cir.1988) (where an employer changes its alleged non-discriminatory reason, that alone is strong evidence of pretext). Favors contends that Harper told her that the reason Wessling received the promotion was because Wessling would not require any training. At trial, Harper denied ever telling this to Favors because anyone hired for the position of Contract Specialist would need to be trained. Harper acknowledged that Wessling, at the GS–7 level, would only need one year's training, while Favors, at the GS–5 level, would have needed at least two years of training. However, Harper maintained that Wessling received the promotion solely because he scored higher on the ten-question test than any other applicant.

The district court stated that it did "not believe that Carl Harper told Nora Favors that Ray Wessling would need no training. That is clearly contrary to what everybody knew at the time, that the Contract Specialist position was known to be a training position." Due regard must be given to the trial court in judging the credibility of witnesses. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (*Anderson*). "[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what

is said." *Id.* at 575, 105 S.Ct. at 1512. "[W]hen a trial judge's finding is based on his [or her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* In the present case, the district court heard the oral testimony of both Favors and Harper. Harper's account of why he selected Wessling for promotion is plausible and is neither contradicted by any extrinsic evidence nor internally inconsistent. Under these circumstances, the district court's decision to credit Harper's testimony was not clearly erroneous.

██ Second, Favors argues that Harper's destruction of the ten-question test and results violates 29 C.F.R. § 1602.14[2] and therefore shows that GSA's articulated reason is pretextual. The regulation requires that an employer preserve "relevant personnel records" including "test papers completed by an unsuccessful applicant and all other candidates for the same position" for six months from the date of the making of the record or the personnel action, and continue preservation of all relevant records once a charge of discrimination has been filed until final disposition of the charge of discrimination. GSA argues that the ten-question test was not a personnel or employment record within the meaning of § 1602.14, but rather, merely constitutes Harper's interview notes.

---

2. 29 C.F.R. § 1602.14 (1983) (emphasis added) provides:

(a) Any personnel or employment record made or kept by an employer (including but not necessarily limited to application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of 6 months from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of 6 months from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the respondent employer shall

preserve all personnel records relevant to the charge or action until final disposition of the charge or action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or *test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.* The date of "final disposition of the charge or the action" means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

We believe, and the district court so found, that the regulation encompasses the ten-question test administered by Harper and the resulting answers. Each objective question called for a single correct answer and served as a means of determining the applicant's knowledge and application of procurement rules and regulations. Harper assigned a numerical score to each response provided by an applicant. Harper's ten-question test indeed constituted a "test" within the meaning of § 1602.14. The ten-question test and answers were relied upon by Harper in selecting the Contract Specialist. The documents were "records having to do with promotion," 29 C.F.R. § 1602.14(a), and are thus employment records which should have been retained by GSA for at least six months after the employment decision. Harper's destruction of the ten-question test and answers violates this federal regulation.

■ The district court found that because Harper violated § 1602.14 by destroying the test and records, Favors was entitled to the benefit of a presumption that the destroyed documents would have bolstered her case. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1419 (10th Cir.1987) (*Hicks*); *Capaci v. Katz & Besthoff, Inc.,* 711 F.2d 647, 661 n. 7 (5th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984). Nevertheless, the district court found that GSA presented sufficient evidence to overcome such a presumption. Harper testified that the records were not destroyed because they showed something contrary to GSA's position. Rather, Harper testified that the ten-question test and results were immediately destroyed because he anticipated using the same or similar questions again in future promotion decisions. Harper testified that he was unaware of any reason to keep the ten-question test and answers because he had never been advised by his supervisors of any federal regulations which would mandate their preservation. Harper also testified that he had previously administered similar tests on seven occasions, and it was his normal practice to immediately destroy the documents. The district court "believe[d] the test results were destroyed as Harper testified, because Harper had not been told to

keep them and because it was best not to keep the questions around because he was going to be" using those questions again. The district court found that Harper's testimony created an inference that he did not destroy the documents in anticipation of litigation. Where two permissible views of the evidence exist, the district court's choice between them cannot be clearly erroneous. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. We cannot say that the district court's finding that GSA rebutted any presumption that the destroyed test questions and answers would have bolstered Favors' case was clearly erroneous.

■ Favors contends that, because Harper destroyed the ten-question test and results, she was not afforded a "full and fair opportunity" to demonstrate pretext within the meaning of *Burdine.* Favors argues that, because Harper destroyed the documents, she was deprived of her opportunity to challenge the scoring of the answers and dispute whether the questions were truly job-related. While we do not condone Harper's destruction of the documents, we disagree with Favors' contention. Favors was provided with the opportunity to cross-examine Harper. Harper testified that Wessling correctly answered nine or ten questions, in contrast to Favors who, Harper testified, correctly answered between five and seven questions. Harper not only testified that Wessling received the highest score of the thirteen applicants, but that several other applicants received scores higher than Favors' score. Favors was afforded the opportunity to challenge Harper's veracity and reliability, and to cross-examine GSA's other witnesses. Moreover, the destruction of the ten-question test and answers entitled Favors to a presumption of pretext, which imposed upon GSA the burden of showing that the documents were destroyed in good faith. We hold that Favors was provided with a fair and full opportunity to establish pretext.

The district court found both Harper's recollection of the applicants' scores and his explanation for destroying the ten-question test and answers to be credible. Affording due regard to the district court's assessment

of Harper's credibility, we hold that the district court's ultimate conclusion that Favors was not the victim of intentional discrimination is not clearly erroneous.

Accordingly, we affirm the judgment of the district court.