**John Paul MARTIN, et al., Appellant,**

v.

**Burma Jean MARTIN, et al., Appellee.**

**No. LR–C–97–290.**

United States District Court,
E.D. Arkansas,
Western Division.

June 6, 1997.

---

Michael J. Knollmeyer, Knollmeyer Law Office, Jacksonville, AR, for appellants.

Keith L. Grayson, Grayson & Grayson, P.A., North Little Rock, AR, for appellee.

James F. Dowden, Grobmyer, Ramsay & Ross, Little Rock, AR, for trustee.

### MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

John Paul Martin and Hazel Victoria Martin (the "Martins") appeal an Order by United States Bankruptcy Judge Mary Davies Scott finding that the debtor, Burma Jean Martin ("Burma Jean"), has both equitable and legal interest in two parcels of real property, thereby denying their motion for abandonment. Having carefully considered the matter, the Court affirms the Order of the bankruptcy court denying the Martins' motion for abandonment. Jurisdiction is proper under 28 U.S.C. § 158.

### I.

This Court sits as an appellate court for the decisions of the bankruptcy court. Bankruptcy Rule 8013. As such, this Court's role in the bankruptcy proceedings is limited. Legal conclusions are reviewed de novo on appeal, while factual findings will not be set aside unless "clearly erroneous." *Id. See also United States v. Roso,* 76 F.3d 179, 181 (8th Cir.1996) (citations omitted). Matters and decisions within the discretion of the bankruptcy judge will not be disturbed absent plain error or abuse of discretion. *Eldridge v. Waugh,* 198 B.R. 545, 547 (E.D.Ark. 1995), *aff'd,* 95 F.3d 706 (8th Cir.1996). Under the "abuse of discretion" standard, the Court's inquiry is not how it would have ruled, but whether reasonable persons could differ as to the propriety of the bankruptcy judge's decision. *Id.*

### II.

On September 20, 1995, Burma Jean Martin filed in the United States Bankruptcy Court for the Eastern District of Arkansas a voluntary petition under Chapter 7 of the bankruptcy code. The trustee included in Burma Jean's bankruptcy estate two parcels of real property, the legal descriptions of which are (1) Lot 18, Block 1, Overbrook Addition to the City of North Little Rock (2500 Cedar Creek), Pulaski County, Arkansas, and (2) Kingsbridge Townhomes Apartment No. 11, Horizontal Property Regime No. 1, Pulaski County, Arkansas.

On April 26, 1996, the Martins filed a motion for abandonment of the two parcels of property, arguing that they had exclusive title to the properties and that Burma Jean had no legal or equitable interest of any value in the properties. The bankruptcy court held a trial on this matter on October 23, 1996, at which the court heard the testimony of Hazel Martin and Burma Jean. On January 29, 1997, the bankruptcy court issued an Order denying the Martins' motion for abandonment. It is from that Order that the Martins appeal.

### III.

The issue before this Court is whether the bankruptcy court was clearly erroneous in its

determination that the bankruptcy estate of Burma Jean Martin had a legal or equitable interest in the subject properties which was of more than inconsequential value to the estate. In arguing for reversal, Burma Jean admits that she was listed on the titles to the properties but argues that she was nevertheless in a confidential relationship with her parents such that a constructive trust should be imposed.

■ As a preliminary matter, the Court rejects the trustee's claim that the issue of constructive trust was not raised in the bankruptcy court and that this Court should not consider the issue on appeal. Although the term "constructive trust" may not have been used, the Court agrees with the Martins that the trial in bankruptcy court was over equitable title and all of the testimony went to that issue, of which constructive trust was a component. The issue of constructive trust was sufficiently raised below and the Court will proceed to a determination of that issue.

■ A constructive trust is established when the court, considering all the circumstances, determines the beneficial interest should be separated from the legal title. *Andres v. Andres*, 1 Ark.App. 75, 613 S.W.2d 404, 407–08 (1981) (citations omitted). *See also Cupples Farms v. Fed. Land Bank of St. Louis*, 128 B.R. 769, 773–74 (Bankr. E.D.Ark.1991) ("[a] constructive trust is an equitable remedy imposed by the court to confer on the true owner of property the equitable interest in the property superior to that of the owner of the legal title") (citations omitted). Such trusts are said to arise and be imposed in favor of persons entitled to a beneficial interest against one who secures legal title by, among other things, violating a confidential or fiduciary duty. *Andres*, 613 S.W.2d at 407 (citations omitted). The confidential relationship does not necessarily exist simply because the parties live in the same household or because they are related, however. *Id.* at 408. Rather, a constructive trust must be justified by proof which is full, clear and conclusive, or of so positive a character as to leave no doubt of the fact, and of such clearness and certainty of purpose as to leave no well-founded doubt upon the sub-

ject. *Fed.Land Bank of St. Louis*, 128 B.R. at 773–74 (citations omitted):

■ The bankruptcy court found, and this Court agrees, that Burma Jean's name appears on the deeds to the properties such that "she clearly has a legal interest in the properties." Order, at 2. Indeed, Burma Jean was one of three grantees on the deed to the Cedar Creek property. She listed a one-fourth interest in that property with the bankruptcy trustee and is the insured under the Cedar Creek property insurance policy. Burma Jean was permitted to obtain proceeds, hold bank deeds, fill out loan applications for her parents, and handle transactions on the property. Similarly, a 1986 deed to the Kingsbridge property was made out to "Burma Jean Martin, d/b/a Garland Financial," and she also signed a contract of sale on that property, executed a deed to it in 1989, and in 1995 again took title in a deed in which she was one of three grantees (the other two were Burma Jean's father and his granddaughter).

■ Burma Jean argues, however, that the record is replete with testimony that she held title to the properties as an agent for her parents and that such testimony establishes a constructive trust. It is true that there was testimony indicating both the existence of a confidential relationship between the Martins and Burma Jean and a constructive trust. For example, Hazel Martin testified that Burma Jean initially took title to the Kingsbridge property as an agent for Garland Financial, which was at one time owned by Burma Jean but later sold by her to her parents. She testified that Burma Jean did not pay any of the purchase price for the property or receive the payments from a buyer of the property, and claimed that Burma Jean did not know that the last deed to the property included Burma Jean as a grantee. She further testified that Burma Jean had certain authorization to act as an agent for the Martins with respect to management of their properties. Hazel Martin also testified that Burma Jean, without authority, completed and filed deeds signed in blank by the Martins, and that this activity led the Martins to sue Burma Jean for the return of their property. She also testified

concerning numerous other real estate transactions by both the Martins and Burma Jean, most of which concerned the Kingsbridge property. She testified that the only reason Burma Jean was a grantee of the Cedar Creek property was to permit her to take the property in the event of the death of both of her parents.

Although the testimony of Hazel Martin, if believed, could establish that a confidential relationship existed between the Martins and Burma Jean and that Burma Jean held title in constructive trust to the Kingsbridge property,[1] the bankruptcy court specifically rejected as non-credible the testimony of both Hazel Martin and Burma Jean, stating as follows:

> The testimony offered by the parents was not only insufficient, it was not credible. Hazel Martin answered affirmatively to leading questions, but could not testify with any credibility when asked direct questions. Nor could she testify with any credibility without documents from which she could read her answer. On numerous occasions, Hazel Martin appeared to be questioning her attorney as to what her answer should be. On cross-examination, she could not directly answer any question. The talismanic answer that the conveyances were made to "avoid probate" is not truthful. *Cf. United States v. Parks*, 1991 WL 115775 *3, *6 (D.Utah Apr. 26, 1991) (rejecting "estate planning" assertions). Hazel Martin's assertions that the debtor had no interest in the property does not ring true when one considers that she permitted her daughter to obtain proceeds, hold blank deeds, fill out loan applications for the parents, and handle transactions on the property. This is particulary so in light of Hazel Martin's assertions of "50 years experience in real estate."

Order, at 4. The bankruptcy court went on to note that "[t]he debtor's testimony is particulary incredible." *Id.*

Due regard must be given to the bankruptcy court in judging the credibility of witnesses. *Favors v. Fisher*, 13 F.3d 1235, 1238 (8th Cir.1994) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Indeed, "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* (quoting *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512). The record in this case reflects that Hazel Martin's testimony was evasive and inconsistent. Even though her testimony was never specifically refuted, the bankruptcy judge did not have to believe her. *See Fisher*, 13 F.3d at 1239 ("[w]here two permissible views of the evidence exist, the [bankruptcy] court's choice between them cannot be clearly erroneous") (citing *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511–12). Having considered the record, this Court cannot say that the bankruptcy court's credibility determinations were clearly erroneous.

The Order of the bankruptcy court is affirmed.

---

1. The trustee states that the Kingsbridge property has since been abandoned from the bankruptcy estate, leaving only the Cedar Creek property which is of significance to this estate. *See* Brief of Appellee, at 4–5.