# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 19, 2010         Decided March 29, 2011

No. 09-5373

CARMEN S. TALAVERA,
APPELLANT

v.

RAJIV SHAH, ADMINISTRATOR, U.S. AGENCY FOR
INTERNATIONAL DEVELOPMENT,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00720)

———

*Jonathan L. Gould* argued the cause and filed the briefs for appellant.

*Alan R. Kabat* was on the brief for *amicus curiae* Metropolitan Washington Employment Lawyers Association in support of appellant.

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Jane M. Lyons*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS and BROWN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Senior Judge* SILBERMAN.

ROGERS, *Circuit Judge*: Carmen Talavera, a former employee of the United States Agency for International Development ("USAID"), appeals the grant of summary judgment on her claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Talavera contends that while employed by the Office of Security she was referred for an unwarranted mental health screening in retaliation for protected activity, and that she was passed over for promotion to a GS 14 position in June 2004 and again in November 2004, and ultimately she was removed from her position in September 2005, as a result of unlawful gender discrimination and retaliation. We affirm the grant of summary judgment except with regard to the June 2004 non-promotion claim. As to that claim we hold that Talavera offered sufficient evidence to raise a material issue of disputed fact whether the USAID's explanation for her non-promotion was pretextual and from which a reasonable jury could find unlawful gender discrimination. Accordingly, we affirm in part and we reverse and remand Talavera's June 2004 non-promotion gender discrimination claim.

## I.

Talavera, a Hispanic woman, had worked for the federal government for twenty-two years[1] before working in the USAID

---

[1] Talavera worked at the General Services Administration ("GSA") from 1985 to 2001. From 1994 to 2001 she was a Physical

Office of Security from September 2001 until she was removed from her position four years later. The director of the Office of Security until August 2004 was Michael Flannery. Talavera was initially assigned as a GS 13 Security Specialist to the Personnel, Information and Domestic Security Division ("Information Security" division), which was headed by Randy Streufert. In July 2003, she was transferred to a GS 13 Regional Operations Officer position in the Physical Security Program Overseas Division ("Physical Security" division), which was headed by David Blackshaw; her immediate supervisor was Gaylord Coston.

Talavera had complained in early 2003 to her team leader and Flannery about being sexually harassed by a contractor. When the contractor was nevertheless hired and Talavera complained to Flannery, Flannery transferred her to the Physical Security Division. During a training trip with Coston in 2003, Talavera challenged Coston's personnel decisions as favoring men. An Equal Employment Opportunity Office ("EEO office") report in December 2004 showed that there were no women in GS 14 or higher positions in the Office of Security; March 2005 statistics showed no change.

---

Security Specialist focusing on crime prevention and disaster preparedness; from 1985-1994 she was an Equipment Specialist working extensively with outside contractors and vendors. While at GSA, Talavera received training in physical security, including from the Federal Law Enforcement Training Center, the American Society for Industrial Security, the Occupational Safety and Health Administration, and the Academy of Physical Security. She was named GSA Employee of the Year in 1998. While working in the USAID Office of Security, Talavera received excellent performance evaluations and cash awards in the Personnel, Information and Domestic Security Division, and was approved for a cash award based on her outstanding performance in the Physical Security Program Overseas Division, On the Spot Cash Award (May 27, 2004).

The district court opinion relates the factual underpinnings of Talavera's claims with regard to her referral for a psychiatric screening (that never took place) attendant to her medical examination for clearance to serve a tour of duty in Iraq, her non-promotion to a GS 14 position in November 2004, and the eventual termination of her employment in September 2005. *See Talavera v. Fore*, 648 F. Supp. 2d 118 (D.D.C. 2009). We need not repeat them here because upon *de novo* review, *see Miller v. Hersman*, 594 F.3d 8, 10 (D.C. Cir. 2010), we cannot conclude that summary judgment was inappropriately granted on these claims. We therefore focus on what happened in connection with Talavera's non-promotion to a GS 14 position in June 2004. From our review of the entire record we are confident that doing so does not prejudice either party's contentions on appeal.

In May 2004, Talavera applied for a GS 14 Security Specialist position in the Information Security division where she had worked for 22 months and where she had earned two cash bonuses approved by Streufert. She was placed on the best qualified list, based on the applicants' self assessments; an asterisk indicated only she submitted complete documentation to support her application. Streufert, the selecting official, interviewed all of the candidates in early June 2004, including Talavera. In that same time period Talavera told Coston and Blackshaw that she was filing an EEO complaint regarding the mental health screening referral. Streufert shortly thereafter selected Regional Operations Officer Anthony Mira based on his answers to the questions Streufert had asked during the interview. Although Office of Personnel Management ("OPM") regulations required promotion materials to be preserved for two years, *see* 5 C.F.R. § 335.103(b)(5) (2002), and EEOC Regulations required preservation for one year, *see* 29 C.F.R. § 1602.14 (1991), Streufert destroyed his interview notes in August or September 2004. He also did not enter the questions

he asked or the rankings and justification for his selection of Mira into the Human Resources computer system; the USAID regulations did not require him to do so.

Upon exhausting her administrative remedies, Talavera filed a complaint on April 23, 2007, and an amended complaint on January 4, 2008, alleging that the USAID had unlawfully discriminated and retaliated against her in violation of Title VII. The district court granted the USAID's motion for summary judgment, and Talavera appeals.

## II.

On appeal, Talavera contends that the district court erred by failing to evaluate her evidence in its totality and failing to assume the truth of the facts and draw inferences in her favor. Specifically, as relevant to her July 2004 non-promotion, she maintains that the district court ignored all of her evidence of male favoritism in past promotions, bonus awards, and job assignments; discounted comments that showed gender bias and retaliatory animus in the GS 14 selecting official; allowed the USAID to rely on interview results despite the selecting official's improper destruction of his interview notes and excluded evidence that she was asked different questions during her interview than the men who applied; and discounted evidence of under-representation of women in upper management.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence is to be viewed in the light most favorable to the nonmoving party and the court

must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Although summary judgment is not the occasion for the court to weigh credibility or evidence, *see Anderson*, 477 U.S. at 255; *Holcomb*, 433 F.3d at 895, summary judgment is appropriate "if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. [2]

The foundation for analyzing Title VII claims was laid in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and embracing subsequent Supreme Court decisions, this court has applied the standard, *see Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). More recently, the court has clarified that once the employer has asserted a legitimate non-discriminatory reason for its decision, the district court should proceed to address "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of . . . [gender]?" *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). Accordingly, we look to "(1) the plaintiff's

---

[2] *Cf. Harbor Ins. Co. v. Schnable Foundation Co., Inc*., 946 F.2d 930, 935 (D.C. Cir. 1991).

*prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Aka*, 156 F.3d at 1289; *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993).

The USAID claimed that Streufert's selection in June 2004 of Anthony Mira over Talavera for the GS 14 promotion was based on his superior performance during his interview by Streufert. In support of her claim that she was passed over for this promotion because of gender discrimination and retaliation, Talavera offered evidence that included:

1. Statements by the Director of the Office of Security. In her formal EEO complaint, Talavera recounted several statements by Flannery, the Director of the Office of Security until August 2004, who was Streufert's boss, to demonstrate that Streufert was biased against women. Flannery had told her, for example, that Streufert was not "culturally sensitive," had "many issues" with women, and "couldn't deal being an equal colleague to a woman." Memorandum for EEO Record from Carmen S. Talavera (Mar. 25, 2005). Talavera contends that the district court erred in discounting the probative value of these statements by importing a requirement the comment be directly connected to an adverse action or occur in the context of the promotion decision.[3] *See Talavera*, 648 F. Supp. 2d at 131–32.

---

[3] Talavera cites *United States v. Castleberry*, 116 F.3d 1384, 1390–91 (11th Cir. 1997) (holding statements admissible because reasonably close to the dates of an alleged conspiracy, construing FED. R. EVID. 801(d)(2)(E)), and *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 55–56 (2d Cir. 1998) (holding, despite the lag time of statements made over a year prior to the employee's discharge, statements admissible as part of a sequence of events culminating in the

On appeal the USAID maintains that the statements were inadmissible hearsay and not a party admission under Federal Rule of Evidence 801(d)(2)(D), relying on the district court's analysis.

Rule 801 of the Federal Rules of Evidence provides that a statement is not inadmissible hearsay when it is an admission by a party opponent. FED. R. EVID. 801(d)(2). Although this circuit has not spoken to the precise evidentiary issue, *see generally U.S. v. Paxson*, 861 F.2d 730, 734–35 (D.C. Cir. 1988), opinions from other circuits on the requirements of Rule 801(d)(2)(D) are instructive.

In the employment discrimination context, the circuit courts of appeal have held that Rule 801(d)(2)(D) requires only that the declarant have some authority to speak on matters of hiring or promotion or that the declarant be involved in the decision-making process in general. This, along with evidence that the statements were made during the existence of the employment relationship and relate to the challenged action, is sufficient to allow the statements into evidence as party admissions. *See generally* 30B M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7023 (Interim Ed. 2006). For instance, in *Marra v. Philadelphia Housing Authority*, 497 F.3d 286 (3d Cir. 2007), the Third Circuit held admissible statements allegedly made by the employee's direct supervisor that there would be repercussions by the employer against anyone who testified against the employer in a previous discrimination suit. The court held that "[p]ersonal involvement in the employment decision being litigated" is not "an absolute prerequisite" to admissibility of a statement under Rule 801(d)(2)(D). *Id.* at 297. The Seventh Circuit has reached the same conclusion. In *Stephens v. Erickson*, 569 F.3d 779 (7th Cir. 2009), the court held

discharge). Neither is directly on point.

that "[f]or an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action." *Id.* at 793 (internal quotations omitted). The court had earlier held in an age discrimination case in *Hybert v. Hearst Corp.*, 900 F.2d 1050 (1990), that a statement by the employee's immediate supervisor informing him that other management officials had said the company wanted to get rid of older workers was admissible under Rule 801(d)(2)(D) because "[the statements] were direct warnings by [the supervisor], himself a member of management, given to . . . his subordinate, as to the attitude, intentions and/or policy of the higher-ups in management." *Id.* at 1053.

As Director of the Office of Security, it is undisputed that Flannery was empowered to speak on the subject of promotions within the Office and was involved generally in the promotion process. His statements to Talavera, made during his tenure as Director, were "direct warnings" about the "attitude" of a management official he supervised. *See Hybert*, 900 F.2d at 1053. Regardless of whether or not Talavera has shown that Flannery was personally involved in the June 2004 promotion, and regardless of exactly when the statements were made, they are directly relevant to the question of whether impermissible gender discrimination may have played a part in Streufert's promotion decision. Talavera was not obligated to prove more because Rule 801(d)(2)(D) does not require for admissibility that the exact time and precise context in which a statement was made be established. Further, on summary judgment Talavera, as the non-moving party, is entitled to the benefit of all reasonable inferences from the evidence, *see Anderson*, 477 U.S. at 255, and a reasonable inference is that Flannery was speaking about Streufert's biased attitudes towards women and this bias

had implications for the promotion decision that Streufert made in June 2004.

In ruling that Talavera had failed to establish the context of Flannery's statements and hence they were not probative of Streufert's discriminatory intent, 648 F. Supp. 2d at 132, the district court relied on *Figures v. Board of Public Utilities*, 967 F.2d 357, 360–61 (10th Cir. 1992), which upheld pursuant to Federal Rule of Evidence 403, exclusion of "anecdotal evidence of discrimination," namely "racial comments" made by the defendants, as "not probative of any issue in the case unless [the plaintiff] could link those comments to personnel actions of hiring, firing and promoting." In contrast, the statements Talavera seeks to introduce are not stray comments by an employer; they are statements by the head of the Office of Security relating specifically to alleged gender bias on the part of the subordinate manager who was responsible for making the employment decision that Talavera challenges. As a result, the statements themselves are intrinsically linked to the disputed personnel action, and *Figures* is inapposite. The district court erred in concluding the statements were not probative of Streufert's discriminatory intent.

By contrast, the district court properly ruled that the statements by Michael Lessard were inadmissible hearsay. See *Talavera*, 648 F. Supp. 2d at 131; *cf. Carter v. George Washington Univ.*, 387 F.3d 872, 880 (D.C. Cir. 2004). Talavera recounted in an affidavit that her colleague Michael Lessard had told her that he and Roger Rowe were asked different questions than Talavera during their interviews with Streufert. Talavera offered no evidence that these statements were within the scope of Lessard's employment or that he was given authority to speak on behalf of the USAID on the subject of employment decisions and thus admissible under Rule 801(d)(2)(D). *See, e.g.*, *Stephens*, 569 F.3d at 793–94; *Jacklyn*

*v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999).

2. Streufert's Statement. At least a year before the June 2004 promotion decision, according to Talavera's March 25, 2005 EEO memorandum, even though she also had served in the military, Streufert had told her that the men in the office had bonded because they served in the military. The district court discounted this statement as a "stray remark" and as unconnected to the promotion decision at issue, *Talavera*, 648 F. Supp. 2d at 132, but ruled that Talavera was entitled to have this evidence considered as part of her overall claim that the USAID discriminated against her, *id.* at 134. At the summary judgment stage of proceedings the court is not to weigh the evidence, *see Holcomb*, 433 F.3d at 895, and Streufert's statement is relevant to Talavera's claim of gender discrimination, illustrative of Flannery's statements about Streufert's animus toward women, and properly considered in evaluating whether the totality of evidence shows the USAID's explanation was pretextual.

3. Streufert's Destruction of Interview Notes. Approximately two months after conducting the interviews and making his selection decision, Streufert destroyed all of his interview notes. Streufert admitted that he had destroyed his notes in August or September, 2004, stating that he "typically destroy[ed] this type of material unless there [was] a reason to keep it," and he had "no information that any of the candidates had officially questioned the selection." Streufert Aff. 3, July 27, 2005. Streufert also did not enter any notes relating to his promotion decision into the Human Resources computer system although it provides space for comments on each applicant and although other managers made such entries. This was despite Streufert's sworn statement that, having supervised all of the applicants, the interview process would give him the

information he needed to make a selection for the GS 14 promotion. The district court ruled that in the absence of evidence of bad faith, Talavera was entitled to only a "weak adverse inference" relating to the destruction of the notes because the destruction was "at worst negligent" and not intentional. *Talavera*, 648 F. Supp. 2d at 133.

This court has recognized the negative evidentiary inference arising from spoliation of records. *See Webb v. D.C.*, 146 F.3d 964 (D.C. Cir. 1998); *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469 (D.C. Cir. 1995). Observing that entry of a default judgment as a sanction for destruction of records is a "drastic" sanction [that] is merited only when "less onerous methods . . . will be ineffective or obviously futile," *Webb*, 146 F.3d at 971; *see also Shepherd*, 62 F.3d at 1478, the court explained that the evidentiary presumption that the destroyed documents contained favorable evidence for the party prejudiced by their destruction was a lesser, more common sanction. *Webb*, 146 F.3d at 974 & n.20. Indeed, in *Webb* the court stated that the lack of compliance — the defendant's "general practice of discarding files after a set period of time" and "failing to notify employees systemwide of the federal regulations that imposed a duty to retain such materials" — was "certainly serious and must be addressed." 146 F.3d at 975–76. Other circuits have similarly held that violation of a regulation requiring document preservation can support an inference of spoliation. *See, e.g.*, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108–09 (2d Cir. 2001); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987). Notably, in *Byrnie*, 243 F.3d at 109, the employer, like Streufert, had a practice of destroying records after the hiring process concluded. The Second Circuit held that where there was a written policy requiring document preservation and documents had been destroyed in violation of that policy, the obligation to preserve records attaches as long as the party

seeking the inference is "a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." *Id.* Further, that "where, as here, a party has violated an EEOC record-retention regulation, a violation of that regulation can amount to a breach of duty necessary to justify a spoliation inference in an employment discrimination action." *Id.*

The USAID acknowledges that Streufert was required under OPM regulations to keep his notes for two years, 5 C.F.R. § 335.103(b)(5) (2002). Further, regulations of the EEOC required him to keep his notes for one year, 29 C.F.R. § 1602.14. These regulations do not contain an exception encompassing Streufert's "typical" practice. Streufert admits to knowing or negligent destruction of his interview notes insofar as the destruction was not accidental. *See id.* Talavera is a member of the classes sought to be protected, for the EEOC regulation pertains to employees who file Title VII complaints and the OPM regulation pertains to grievances of promotion decisions. The destroyed records were relevant to Talavera's challenge because the USAID defended on the ground that her non-selection was based on her poor performance during Streufert's interview of her, and the notes might have undermined his claim that the man he selected exhibited more knowledge of the job than she did and might also have confirmed Talavera's assertion that Streufert asked her different questions than he asked of the men he interviewed. *See Byrnie*, 243 F.3d at 109–10. The notes represented Talavera's best chance to present direct evidence that Streufert's proffered reason for the selection was pretextual.

A reasonable jury could conclude that Streufert's non-accidental destruction of his notes supports an inference that the notes would have contained information favorable to her claim. For example, Streufert admitted that he could not recall whether

Talavera had mentioned relevant portions of her prior federal government experience. He also admitted that when in the past he had been involved with an EEO complaint about his selection of a man rather than a woman, he was asked to submit his justification and had done so in writing. Also, a reasonable jury could find that the statement in Streufert's deposition that he knew that agencies are required to keep records, but he thought it was Human Resources' responsibility to do so, was to some extent contradictory with the statement in his prior affidavit that he was not aware of any policy concerning note retention by selecting officials. Given his failure to enter notes on his promotion decision into the Human Resources computer system, it is unclear how he imagined that Human Resources would be able to keep records on the promotion decision when he had provided them no notes on his selection decision.

The district court thus erred in finding that Talavera was entitled to only a "weak adverse inference" of spoliation, and that "[t]he destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim." *Talavera*, 648 F. Supp. 2d at 133-34 (alteration in original; citations omitted). The spoliation inference must be considered along with Talavera's other admissible evidence regarding unlawful gender discrimination.

Given the USAID's proffer of a legitimate, non-discriminatory reason for Streufert's selecting Mira — that, according to Streufert, Mira performed better during his interview than Talavera and was the only candidate who had learned the technical information Streufert was assessing — the question is whether Talavera offered sufficient admissible evidence, when considered in its totality and according her all reasonable favorable interferences from the evidence, from

which a reasonable jury could find that the USAID's reason was pretextual. *See Aka*, 156 F.3d at 1290; *see also Brady*, 520 F.3d at 494. The district court did not consider either Flannery's or Streufert's statements, both of which it excluded as irrelevant. It drew only a "weak" inference from Streufert's destruction of his interview notes. Viewing this evidence most favorably to Talavera, a reasonable jury could find that the USAID's reason was pretextual. When the Director's statements regarding Streufert's discriminatory attitude toward women, as illustrated by Streufert's own statement indicating a preference for male colleagues in the workplace, is combined with Streufert's improper destruction of his interview notes on which he claimed to have based his promotion selection, a reasonable jury could find that his discriminatory attitude affected his decision to pass over her for promotion and that the USAID's stated reason for Talavera's non-promotion was a pretext for unlawful gender discrimination. Because Talavera produced sufficient evidence for a reasonable jury to find pretext, *see Aka*, 156 F.3d at 1290, summary judgment on this claim was inappropriate.

By contrast, Talavera failed to present evidence from which a reasonable jury could find that her June 2004 non-promotion was the result of unlawful retaliation by Streufert for her June 8, 2004 EEO complaint regarding the unwarranted referral for a mental health screening. To prove unlawful retaliation Talavera had to show that Streufert, who made the promotion selection, had knowledge of her protected activity. *See Jones*, 557 F.3d at 679. Although she "need only offer circumstantial evidence that could reasonably support an inference" that Streufert knew of her EEO activity, *id.* at 679, and context matters, *Burlington Northern*, 548 U.S. at 69, Talavera offered only evidence from which a reasonable jury would have had to speculate that he knew and that is insufficient to defeat summary judgment.

Talavera asserts that Streufert worked closely with Coston and Blackshaw, discussing personnel matters in the Office of Security on a regular basis and they hung out together. She had told Coston and Blackshaw that she was going to file an EEO complaint about their referral of her for a mental health screening. She therefore concludes that Streufert must also have known given the close temporal proximity between the protected activity on June 8, 2004, when she filed her EEO complaint, and his promotion decision on June 16, 2004. Although an adverse action that occurs shortly after protected activity can be part of a finding of retaliation, *see Clark County School District v. Breeden*, 532 U.S. 268, 273–74 (2001), "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine," *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007). Talavera offered no evidence, for instance, of a managers' meeting between June 8 and 16, much less that Coston or Blackshaw revealed the referral for a mental health screening to anyone other than the examining physician. Given Streufert's denial under oath that he knew of the June 8 EEO complaint, the fact that Streufert had been her previous supervisor still requires a speculative leap that her then-current supervisors would have discussed the complaint with him.

Talavera's reliance on her discussions with Streufert of previous complaints is misplaced because too much time had passed to link the past activity to the challenged action. *Talavera*, 648 F. Supp. 2d at 129 n.6. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009); *Woodruff*, 482 F.3d at 530. In *Cones v. Shalala*, 199 F.3d 512 (D.C. Cir. 2000), on which Talavera relies, at the time of the allegedly retaliatory action, the employee's EEO complaints were being investigated and the employee was continuing to file formal discrimination and retaliation complaints. *Id*. at 521. So too in *Holcomb*, 433 F.3d at 903. Talavera's complaints of sexual harassment by a

consultant and denial of a computer monitor occurred long before her non-promotion and were either never presented to the EEO office at all or not part of a formal EEO complaint.

Accordingly, we affirm the grant of summary judgment except with regard to Talavera's June 2004 non-promotion gender discrimination claim, which we remand to the district court.

SILBERMAN, *Senior Circuit Judge*, concurring: I join the court's opinion fully but wish to state that I think this is a close case. We affirmed virtually all of the district court's determinations – including its conclusion that Talavera's discharge was not discriminatory. Talavera, who was a marginal employee – as reflected in her misrepresentations described in the district court opinion, *see Talavera v. Fore*, 648 F. Supp. 2d 118, 137-40 (D.D.C. 2009) – barely produces sufficient evidence to escape summary judgment on one of her prior to discharge non-promotion claims. This case illustrates why district judges typically decline Title VII cases when they take senior status.