BROWN, Circuit Judge,
concurring in part and dissenting in part:
• I concur in reversing the district court’s grant of summary judgment in favor of the Palestinian Authority (“PA”) on the Parsons family’s material support claim under 18 U.S.C. § 2339A. I dissent from the court’s affirmance of summary judgment on the family’s conspiracy claim under § 2332(b). For three reasons, each of which is necessary to my conclusion, I would reverse summary judgment on that claim too. First, I respectfully disagree with Judge Henderson’s conclusion that the Parsons family’s evidence is insufficient to prove the PA “knowingly” provided material support to, and conspired with, the terrorist who killed Mark Parsons. Second, I respectfully disagree with Judge Tatel that the Parsons family forfeited, as to its conspiracy claim, facts we agree the family properly asserted about alleged bomber Amer Qarmout in the material support context; and that the evidence is insufficient to prove conspiracy. Finally, the district court erred in concluding the Palestinian Authority may not be held vicariously liable under the Anti-Terrorism Act for the acts of its agents.
I
Judge Henderson would affirm the district court’s grant of summary judgment in favor of the Palestinian Authority as to both claims, because she thinks the Parsons family has not satisfied the relevant scienter requirements for civil liability under 18 U.S.C. §§ 2339A(a) and 2332(b). Like Judge Tatel, I disagree with Judge Henderson, but we disagree for different reasons. Judge Tatel relies on forfeiture, Tatel Op. at 137-38, and I would reach the merits.[1] The Parsons family satisfies the *140 relevant scienter requirements as to both their material support claim and their conspiracy claim.
A
The Anti-Terrorism Act provides a civil remedy for U.S. nationals injured by an act of international terrorism. 18 U.S.C. § 2333(a). “[International terrorism” is defined to mean extraterritorial or transnational activities that “involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State ... [and] appear to be intended” to achieve the coercive ends of terrorism. Id. § 2331(1). The Parsons family alleges the Palestinian Authority committed the predicate criminal offense of “provid[ing] material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out a violation of section ... 2332,” id. § 2339A(a), which in turn sanctions “[w]hoever kills a national of the United States, while such national is outside the United States,” id. § 2332(a).
Because the Parsons family conceded as much, see Oral Arg. 9:50-10:06, I assume the intent requirement of § 2339A(a) applies to each element of § 2332(a), even though the latter section contains no intent requirement of its own. Cf. Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 1888-89, 173 L.Ed.2d 853 (2009) (holding the scienter requirement in the phrase “knowingly transfers ... without lawful authority, a means of identification of another person” applies to all elements of the clause, including “of another person”); United States v. X-Citement Video, Inc., 513 U.S. 64, 79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (Stevens, J., concurring) (same for elements in different subsections of a single statutory section). In other words, to prevail on its material support claim, the Parsons family must demonstrate the Palestinian Authority “kn[ew] or intend[ed]” its material support to assist not just any killing, but the killing of a U.S. national. Thus, the first interpretive challenge is resolved by agreement of the parties.
But the scienter requirement for material support entails another interpretive problem: Section 2339A is a criminal statute, but it is a predicate for civil liability under § 2333(a). In the context of civil liability, we judge a violation of § 2339A differently than we would if this were a criminal matter. For example, the Parsons family need not prove its case beyond a reasonable doubt, but only by a preponderance of the evidence. Likewise, the civil intent requirements apply, not their criminal counterparts.
Viewed through the lens of civil liability, the “knowing or intending” requirement of § 2339A is satisfied by criminal recklessness, a deliberate indifference to the attendant risk — here, the risk that the material support would be used to kill an American. See Boim v. Holy Land Found, for Relief & Dev., 549 F.3d 685, 693-94 (7th Cir.2008) (en banc). Judge Henderson cites the dissent in Boim to suggest there is disagreement about the scienter requirement. Henderson Op. at 128. But even the dissenters in Boim agree with the criminal recklessness standard in theory. See id. at 721 (Wood, J., concurring in part and dissenting in part). They disagree over the application of this *141 standard to the facts, and this is where I disagree with Judge Henderson. The Parsons family’s case is even stronger than the ease in Boim where a majority of the Seventh Circuit concluded a mere monetary donation to Hamas satisfied the criminal recklessness standard. Here, by contrast, the Parsons family alleges National Security personnel materially supported the planting of a specific bomb and its detonation under a specific American convoy.
Deliberate indifference about the risk to Americans may be reasonably inferred from the interaction of four main pieces of evidence: Qarmout’s statement that he solicited the cooperation of National Security personnel at the checkpoint where he may or may not have actually planted the bomb, the proximity of the bomb to that checkpoint, the presence of a Palestinian Authority car at the head of the American convoy, and the PA’s own investigative report, which concludes National Security personnel tipped off the bomber about the approaching American convoy. Viewed together, this evidence is sufficient for a reasonable juror to conclude the Palestinian Authority’s agents at least knew of the risk that Americans would be targeted and disregarded that risk.
Judge Henderson points out that the unsigned PA report requires a jury to infer something about the “reliability and knowledgability of the statement’s author,” Henderson Op. at 129, but I think the origin, form, and substance of the report reasonably support such an inference. See Talavera v. Shah, 638 F.3d 303, 308 (D.C.Cir.2011) (“[T]he court must draw all reasonable inferences in favor of the non-moving party.”). The Palestinian Authority itself produced the report in discovery. It is addressed to the Director General of the PA’s Preventive Security Service (“PSS”), and purports to be based on firsthand examination of the evidence. Through [Redacted], the PA later confirmed it had disclosed an “investigative file” documenting its investigation, which “involved the forensic analysis of material evidence gathered at the scene of the bombing.” Sealed Appendix (“S.A.”) 259. The PA “verif[ied] that the records produced are authentic copies of records kept in the course of the investigation into the bombing.” Id.
An official government record such as this is entitled to a presumption of regularity, rebuttable only upon a showing of “clear or specific evidence.” PNC Fin. Servs. Group v. Comm’r, 503 F.3d 119, 123 (D.C.Cir.2007) (quoting Riggs Nat’l Corp. v. Comm’r, 295 F.3d 16, 21 (D.C.Cir.2002) (affording the presumption of regularity to a foreign tax receipt)). Since “the early days of the Republic,” the presumption of regularity “has been applied in a variety of contexts.” Am. Fed’n of Gov’t Emps. v. Reagan, 870 F.2d 723, 727 & n. 33 (D.C.Cir.1989) (collecting cases). It governs not only records that “memorialize the occurrence of a specific event,” Henderson Op. at 129, but also posits that government officials follow proper procedures in the conclusions, inferences, and subjective judgments they reach in the regular course of their official duties. See, e.g., Musengo v. White, 286 F.3d 535, 538 (D.C.Cir.2002) (an Officer Evaluation Report used “to evaluate an [Army] officer’s performance and career potential”); S. Pac. Commc’ns Co. v. Am. Tel. & Tel. Co., 740 F.2d 980, 994 (D.C.Cir.1984) (a judge’s adoption of findings and conclusions from a party’s filing); McSurely v. McClellan, 697 F.2d 309, 324 (D.C.Cir.1982) (a warrant issued pursuant to “the judge’s independent opinion that there is probable cause for an arrest or a search”); Jones v. United States, 342 F.2d 863, 884 (D.C.Cir.1964) (“the findings of a grand jury”). Of course, this presumption would not require *142 a jury to accept the author’s inference that National Security personnel knew about the bomb and tipped off the bomber. But it does mean that, absent “clear or specific evidence,” the report should be presumed to be an “authentic copy” of “materials prepared by [one of the PA Preventive Security] [S]ervices investigating the bombing,” as the PA implied it was. S.A. 258, 259.
Judge Henderson assumes, in favor of the moving party, that the report’s author was a rogue investigator who reached unfounded conclusions despite unparalleled access to the evidence. See Henderson Op. at 129-31. Contra Talavera, 638 F.3d at 308 (“The evidence is to be viewed in the light most favorable to the nonmoving party.” (emphasis added)). There is no basis for this assumption. Although the Palestinian Authority is in the best position to do so, it has offered no evidence, much less “clear or specific” evidence, that the report’s author was unqualified to reach the conclusions he did, or that he lacked an evidentiary basis for those conclusions.[2]
The report’s author inferred from the bomb’s proximity to the checkpoint that National Security personnel “ha[d] previous knowledge of the presence of the device.” S.A. 305. Based on “the information in [his] possession,” the report’s author also concluded that the checkpoint personnel or the other National Security personnel accompanying the convoy “leaked” “information of the arrival of U.S. Embassy staff’ to the bomber. Id. A jury could reasonably infer that this conclusion too was based on the bomb’s proximity to the checkpoint— a detail that the report’s conclusion mentions twice. Id. That the evidentiary basis for this conclusion is only implicit in the report does not void the presumption of regularity. See Am. Fed’n of Gov’t Emps., 870 F.2d at 724, 727. We are in no position to say the report’s inferences are unreasonable, coming as they do from the PA’s own ranks after an investigation that only the PA could have conducted. Presumably security guards are responsible for being aware of their surroundings, see Maj. Op. at 125, and there is something suspicious about the timing of an attack that blows up U.S. vehicles but misses the PA’s lead car. Former Palestinian Security Minister Muhammad Dahlan’s statement on AlArabiya TV that Palestinian security forces aided Hamas and martyred themselves during the Second Intifada tends to support that conclusion. See infra pp. 147-48.[3]
This evidence may not be overwhelming, but at the summary judgment stage it need only be sufficient. A jury could reasonably be persuaded by the same evidence that convinced the Palestinian Authority’s own investigator — someone who presumably had access to the scene of the bombing and knowledge of the environment. If the report is correct, the checkpoint personnel acted with more *143 than deliberate indifference; they knowingly assisted in the bombing of an American convoy.
B
The same evidence that proves material support is sufficient to prove the existence of a civil conspiracy. Qarmout’s statement that he asked the National Security personnel at the checkpoint to “turn their attention from the young men who were planting the device” days before the explosion, S.A. 323, supports a reasonable inference of “an agreement to take part in an unlawful action.” Hall v. Clinton, 285 F.3d 74, 83 (D.C.Cir.2002) (quoting Halberstam v. Welch, 705 F.2d 472, 479 (D.C.Cir.1983)). The circumstances of the bombing and the PA report’s conclusion that National Security personnel tipped off the bomber support a reasonable inference of “an overt tortious act in furtherance of the agreement that causes injury.” Id. (emphasis omitted) (quoting Halberstam, 705 F.2d at 479). Therefore, I would reverse the district court’s grant of summary judgment on both claims.
II
Judge Tatel, who casts the deciding vote on each of the Parsons family’s claims, splits the baby by separating with almost surgical precision the evidence advanced in this court for the various theories supporting each claim. The court affirms summary judgment on the conspiracy claim because Judge Tatel ignores the very same evidence we use to reverse summary judgment on the material support claim— Qarmout’s statement that, soon before Mark Parsons was killed on Salahadeen Street, Qarmout took steps to plant a bomb there and asked the National Security personnel at the checkpoint to “turn their attention from the young men who were planting the device.” S.A. 323. According to Judge Tatel, we can overlook the most probative evidence of conspiracy because (1) a party forfeits facts as to any theory for which they are not explicitly argued on appeal, and (2) “the family never defends their conspiracy claim by arguing, as they do with respect to their material support claim, that Qarmout planted the bomb with the help of those stationed at the checkpoint.” Tatel Op. at 135. I respectfully disagree with both premises.
A
Forfeiture is the “failure to make a timely assertion of a right.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Our forfeiture doctrine applies to legal arguments, not facts. Assuming an argument has been properly raised in the district court, we consider it forfeited on appeal if the argument is addressed in a conclusory fashion, see Bryant v. Gates, 532 F.3d 888, 898 (D.C.Cir.2008), or only in a footnote, see NSTAR Elec. & Gas Corp. v. FERC, 481 F.3d 794, 800 (D.C.Cir.2007); or if it is raised for the first time in a reply brief, see Gen. Elec. Co. v. Jackson, 610 F.3d 110, 123 (D.C.Cir.2010), or at oral argument, see United States v. Southerland, 486 F.3d 1355, 1360 (D.C.Cir.2007). No similar rule bars our consideration of a material fact once it has been placed in dispute. Cf. Republic of Iraq v. Beaty, 556 U.S. 848, 129 S.Ct. 2183, 2192, 173 L.Ed.2d 1193 (2009) (assuming the correctness of the proposition that “the President cannot waive a fact”).[4] And we have never held *144 that we are powerless to consider a fact simply because it was raised in the context of a different claim. The concept of claim-specific forfeiture is foreign to facts because facts, unlike legal arguments, are not context-dependent. A fact cannot be true for some purposes and false for others. What would we say to a jury that found Qarmout planted the bomb with regard to the material support claim but that he did not plant the bomb with regard to the conspiracy claim? Cf. Hundley v. District of Columbia, 494 F.3d 1097, 1102-03 (D.C.Cir.2007) (ordering a new trial because “[tjhere is no coherent or reasonable way to reconcile the jury’s two conclusions”). Judge Tatel’s treatment of the Parsons family’s allegation is no more reasonable. Once a fact is in dispute, it is before the court for all relevant purposes; any claim as to which it is material is inappropriate for summary judgment.
As Judge Tatel notes, I have “not identified even a single forfeiture case saying” our forfeiture doctrine does not apply to facts. Tatel Op. at 136. But my failure to find precedent proving this negative only highlights the novelty of his argument. Far more telling is Judge Tatel’s failure to identify a single ease holding that facts properly raised as to one claim are forfeited as to another,[5] or — even more implausibly — that facts asserted as to one particular theory are forfeited as to another theory of recovery under the same claim. Cf. Tatel Op. at 136.
Granted, facts not in the record may not be relied upon in this court, see Carr v. Corning, 182 F.2d 14, 21 (D.C.Cir.1950), and a party who admits or stipulates facts is bound by that concession on appeal, see United States v. Warren, 42 F.3d 647, 658 (D.C.Cir.1994).[6] Even when the record contains relevant facts that have not been conceded away, “it is not the task of this court ... to search the record for supporting evidence.” Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 422 n. 13 (D.C.Cir.1991) (quoting Tarpley v. Greene, 684 F.2d 1, 7 n. 17 (D.C.Cir.1982)). But these evidentiary principles are distinct from the doctrine of forfeiture, and they do not prevent us from considering Qarmout’s statement in the conspiracy context. The Parsons family has never conceded — for the purpose of its conspiracy claim or for any other purpose — that Qarmout did not *145 plant the bomb. The district court clearly did not think so: In the very decision we are reviewing, the court evaluated Qarmout’s statement in the conspiracy context. Estate of Parsons v. Palestinian Auth., 715 F.Supp.2d 27, 34 (D.D.C.2010). And on appeal, the family has consistently and conspicuously asserted facts about Qarmout that, if true, would prove their theory that whoever planted the bomb conspired with the Palestinian Authority.
Especially at the summary judgment stage, it makes little sense to speak of “forfeiting” facts as to one claim but not another. For at this stage, the scope of our review is at its zenith. “In passing on a summary judgment motion, a court may consider materials specified in Federal Rule of Civil Procedure 56(c) as well as ‘any material that would be admissible or usable at trial.’ ” Catrett v. Johns-Manville Sales Corp., 826 F.2d 33, 38 (D.C.Cir.1987) (emphasis omitted) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2721 (2d ed.1983)); see also Adeyemi v. District of Columbia, 525 F.3d 1222, 1227 (D.C.Cir.2008) (“When considering whether summary judgment ... is warranted ..., the court considers all relevant evidence presented by the plaintiff and defendant.”); Vickers, 493 F.3d at 199 (“On summary judgment, we consider not just [the plaintiffs] allegations but also other supporting evidence” in the record.); Hall v. Giant Food, Inc., 175 F.3d 1074, 1079 (D.C.Cir.1999) (“The court must consider all the evidence in its full context in deciding whether ... summary judgment is inappropriate.” (quoting Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C.Cir.1998))). The Qarmout evidence is clearly “usable at trial” to prove conspiracy, not just material support. Catrett, 826 F.2d at 38. We need not ignore it simply because it was raised in support of a different claim. The same evidence proffered by the same plaintiffs against the same defendant would go to the same jury for both claims. It is for the jury to weigh that evidence in context.
B
Even if we had to sever a plaintiffs claims from one another and examine in isolation the evidence proffered for each claim, I would still disagree with the suggested application of this new rule. At the critical point in the operation, the Solomonic scalpel slips. As Judge Tatel must acknowledge, the Parsons family does rely on Qarmout’s statement, not only for the material support claim, but also for the conspiracy claim. In the section of its brief addressing the conspiracy claim, the Parsons family cites the relevant evidence and argues, “[i]t is clear from known-PRC-terrorist Qarmout’s statement that anyone that planted the bomb on [Salahadeen] Street that killed Mark Parsons must have obtained the cooperation of the PA security checkpoint on the road, which was 20 meters from the site of the detonated bomb that killed Mark Parsons.” Appellants’ Br. 33. Assuming the validity of Judge Tatel’s compartmentalized approach to the evidence, Qarmout’s statement is properly before the court as to the conspiracy claim, not just the material support claim.
Judge Tatel acknowledges this reference to Qarmout’s statement but construes it narrowly as an argument that someone other than Qarmout himself conspired with the Palestinian Authority to plant, conceal, or detonate the bomb. Tatel Óp. at 137. The court thus affirms summary judgment on the conspiracy claim for want of an explicit allegation that Qarmout conspired with the Palestinian Authority, despite the Parsons family’s argument — based on Qarmout’s own statement — that whoever *146 planted the bomb would have needed the Palestinian Authority’s cooperation. I do not see why, in the conspiracy context, we should ignore Qarmout’s likely involvement, while finding the very same evidence sufficient to sustain a material support claim. Our task, at the summary judgment stage, is to view all evidence “in the light most favorable to the nonmoving party and draw[ ] all reasonable inferences in its favor.” Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 223 (D.C.Cir.2011) (quoting Venetian Casino Resort, LLC v. EEOC, 530 F.3d 925, 929 (D.C.Cir.2008)). Excluding Qarmout from the Parsons family’s reference to “anyone that planted the bomb on [Salahadeen] Street” seems inconsistent with that rule, especially after the family has consistently argued Qarmout did just that and cited evidence to prove it.
C
Even if it were possible to forfeit facts, and even if the Parsons family had forfeited the Qarmout evidence as to their conspiracy claim, I would not ignore that evidence. We have discretion to address forfeited issues, though we exercise it “only in exceptional circumstances” or to correct plain error. Salazar v. District of Columbia, 602 F.3d 431, 437 (D.C.Cir. 2010). Where, as here, the district court addressed the supposedly forfeited fact in the relevant context, see Estate of Parsons, 715 F.Supp.2d at 34, the forfeiting party raised the fact in a parallel context, see Appellants’ Br. 22-29, and the adverse party suffered no prejudice from the forfeiture, I would exercise our discretion to consider the fact at summary judgment.
I disagree with Judge Tatel’s conclusion that the Palestinian Authority suffered prejudice from the alleged forfeiture. The Parsons family made no secret of its evidence that Qarmout planted the bomb after procuring an agreement from National Security personnel, and the family clearly articulated a theory of conspiracy to match. Under these circumstances, the Palestinian Authority was on notice of the evidence it needed to rebut. Indeed, at oral argument the Palestinian Authority repeatedly, and on its own initiative, ventilated its arguments against the probative value of the Qarmout evidence in the conspiracy context. See Oral Arg. 14:06-20, 15:20-16:37. Where a party responds to an issue despite defects in its presentation, that party has suffered no prejudice and a court need not consider the argument forfeited. See MBI Group, Inc. v. Credit Fonder du Cameroun, 616 F.3d 568, 571 (D.C.Cir.2010); Horizon Air Indus., Inc. v. U.S. Dep’t of Transp., 850 F.2d 775, 781 (D.C.Cir.1988).
Given the nature of the Parsons family’s allegations, evidence sufficient to prove their material support claim is also sufficient to prove conspiracy. Either way, the Parsons family alleges the Palestinian Authority agreed to cooperate with whoever planted the bomb. Where the prevailing theories of material support and conspiracy overlap as they do here, a defendant is unlikely to specially tailor a novel argument against the sufficiency of the evidence to prove conspiracy that he has not already raised in the material support context. The same counterargument that fails to defeat the material support claim necessarily fails in the conspiracy context. The overlapping character of the family’s claims was not lost on the Palestinian Authority. As the PA expressed it, the Parsons family is “sort of cloaking what is a conspiracy theory in a material support theory.” Oral Arg. 28:09-14. It is no wonder then that the Parsons family did not devote equal space to the Qarmout evidence in each section of its brief. Cf. Tatel Op. at 136. That would have been *147 repetitive and wasteful.[7] Because the Palestinian Authority could and did respond to Qarmout’s statement in the conspiracy context, I would not ignore that evidence.
D
Finally, even if I were persuaded to ignore the Qarmout evidence, I would still vote to reverse the grant of summary judgment against the Parsons family’s conspiracy claim. The conclusion of the Palestinian Authority’s own investigative report and the video recording of Muhammad Dahlan, former Palestinian Minister of State Security, are sufficiently probative to get this question to a jury.
Judge Tatel concludes the PA report is of insufficient “caliber” to persuade a reasonable jury because it is anonymous, undated, and leaves unstated some of the facts on which it bases its inference of PA complicity. Tatel Op. at 134 (quoting Anderson v. Liberty Lobby, Inc., All U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). This conclusion neglects the investigative report’s provenance, treating it as if it were a friendly declaration rather than the party-opponent admission it is. As I have already argued, supra pp. 141— 42, the report is a government record entitled to a presumption of regularity. The Palestinian Authority argues there might be innocent explanations for the guards’ failure to prevent the planting of a bomb twenty meters in front of their checkpoint: After all, the Gaza Strip is a chaotic place, and the bomb may have been planted under cover of darkness or when a guard was distracted. See Oral Arg. 22:20-43. But, as Judge Tatel said in oral argument, “That’s a great jury argument.” Id. 22:43-47. “[T]he weighing of the evidence[ ] and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.” Anderson, All U.S. at 253,106 S.Ct. 2505.
Judge Tatel also finds insufficiently probative then-Security Minister Muhammad Dahlan’s statement that
Forty percent of the Martyrs in this Intifada belonged to the Palestinian security forces.
The Palestinian security forces were those who protected and hid half of the Hamas [military] leadership and of the Hamas military force during the Intifada.
Palestinian Media Watch, supra note 3. Judge Tatel is right that Dahlan’s statement, by itself, does not prove “personnel at this checkpoint were complicit in this attack.” Tatel Op. at 135. But this additional evidence certainly lends credibility to the conclusions of the PA’s investigative report. Treating each piece of evidence in isolation may lead to an erroneous view of the whole. See Al-Adahi v. Obama, 613 F.3d 1102, 1105 (D.C.Cir.2010) (“Those who do not take into account conditional probability are prone to making mistakes in judging evidence. They may think that if a particular fact does not itself prove the ultimate proposition ... the fact may be tossed aside and the next fact may be evaluated as if the first did not exist.”), cert. denied, — U.S.-, 131 S.Ct. 1001, 178 L.Ed.2d 855 (2011). Parsons was killed during the Second Intifada, and Dahlan’s statement about the sympathy Palestinian Authority security forces har *148 bored toward its goals may inform a reasonable jury’s view about the reliability of other evidence. Viewed together with the PA report, Dahlan’s statement increases the likelihood the Palestinian Authority conspired with whoever was responsible for the bombing. It is the jury’s job to weigh this evidence. Not ours.
Ill
The district court stated without explanation that “we have no basis on which to assign vicarious liability to the PA for the alleged criminal acts of a few employees.” Estate of Parsons, 715 F.Supp.2d at 34. We have never so held. Cf. Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 & n. 4 (D.C.Cir.2003) (barring the Anti-Terrorism Act suit without reaching the defendant’s vicarious liability argument). Judge Henderson and Judge Tatel avoid deciding whether the Palestinian Authority can be held liable for the actions of its National Security checkpoint personnel by affirming summary judgment on the conspiracy claim on other grounds. I would reach this issue and reverse.
“[W]e start from the premise that when Congress creates a federal tort it adopts the background of general tort law.” Staub v. Proctor Hosp., — U.S.-, 131 S.Ct. 1186, 1191, 179 L.Ed.2d 144 (2011). Consistent with this principle, the Supreme Court has looked to common law doctrines to determine the scope of liability under federal tort laws, see Burlington N. & Santa Fe Ry. v. United States, 556 U.S. 599, 129 S.Ct. 1870, 1881, 173 L.Ed.2d 812 (2009) (“Congress intended the scope of [CERCLA] liability to be determined from traditional and evolving principles of common law.” (quotation mark and alteration omitted)), and of vicarious liability in particular, see Burlington Indus, v. Ellerth, 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (“accommodat[ing] the agency principles of vicarious liability for harm caused by misuse of supervisory authority” in Title VII). The Foreign Sovereign Immunity Act confirms that to the extent it is not immune, a “foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances.” 28 U.S.C. § 1606. Respondeat superior liability is an elementary principle of tort law and must therefore inform our interpretation of the federal torts created in the Anti-Terrorism Act. Thus, the Palestinian Authority is liable for the acts its employees committed within the scope of their employment. See Wilson v. Good Humor Corp., 757 F.2d 1293, 1301 (D.C.Cir.1985).
The Palestinian Authority argues it cannot be held vicariously liable for its employees’ acts because the ATA awards treble damages, which the Palestinian Authority equates with punitive damages; and punitive damages may only be awarded under a vicarious liability theory if the principal authorized, ratified, or approved the act, or if the agent was employed in a managerial capacity and committed the act within the scope of his employment. Appellees’ Br. 51 (citing Kolstad v. ABA, 527 U.S. 526, 542-43, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (quoting Restatement (Second) of Agency § 217C (1958))).[8]
The Palestinian Authority’s central premise is false. Treble damages are statutory or liquidated damages — not punitive damages. The Restatement, on which the Kolstad Court relied, explicitly exempts treble damages from the punitive damages exception to its vicarious liability rule. See Restatement (Second) § 217C, cmt. (c) (“The rule stated in this Section does not apply to the interpretation of special stat *149 utes such as those giving triple damages, as to which no statement is made.”).
The Supreme Court’s statement of the punitive damages exception to vicarious liability is entirely consistent on that score with the underlying opinion of this court, which explicitly distinguished treble damages from punitive damages. Kolstad v. ADA 139 F.3d 958, 966-67 (D.C.Cir.1998) (en banc), vacated on other grounds, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In that opinion we classified “double or treble damages” with “numerically equal compensatory and liquidated damages” for a single violation and concluded “it is quite another [thing] to leverage a compensatory award into a punitive award that is ten or a hundred times greater, with no showing of heightened culpability.” Id. at 967; see also id. at 966-67 (“liquidated damages under the ADEA and punitive damages under Title VII are not twins”). Although courts have characterized treble damages as “punitive” for other purposes,[9] our Kolstad opinion makes clear that for purposes of selecting the applicable standard for vicarious liability, treble damages are not punitive. Indeed, the Supreme Court had already held, in the antitrust context, that treble damages do not trigger the heightened standard for vicarious liability. Am. Soc’y of Mech. Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 575-76, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (“Since treble damages serve as a means of deterring antitrust violations and of compensating victims, it is in accord with both the purposes of the antitrust laws and principles of agency law to hold [the principal] liable for the acts of agents committed with apparent authority.” (citing Restatement (Second) of Agency § 217C, cmt. (c))). I see no basis for a terrorism exception to the Supreme Court’s rule.[10]
The district court evaluated the Palestinian Authority’s report and Qarmout’s testimony under the false assumption that they would have to support “a conspiracy claim against the entire PA” to go to a *150 jury. Estate of Parsons, 715 F.Supp.2d at 34. Instead, the conspiracy of an individual PA employee acting within the scope of his employment suffices to make the PA itself liable. See Wilson, 757 F.2d at 1301. Under this standard, the Parsons family has alleged a conspiracy involving National Security personnel for which the Palestinian Authority may be held liable. I would reverse.
IV
In my experience, it is rare for three appellate judges to disagree with each other so thoroughly, but in this hard case it may be just as well. With only a narrow holding between us, we have at least avoided making bad law.

. Consistent with Judge Tatel's compartmentalized approach to the evidence, which I address below, see infra pp. 143-47, he deals with Judge Henderson’s scienter argument by finding the Palestinian Authority "never identifies section 2339A’s state of mind requirement as a problem for the specific theory we now accept, namely, that the personnel posted at the checkpoint agreed to Qarmout’s request not to interfere with his efforts to plant a bomb.” Tatel Op. at 138. But the PA's argument is the same for every theory— namely, that the guards did not know they were materially supporting the killing of an. American as opposed to, say, an Israeli. I think it is sufficient for a party to raise a statutory scienter defense once for the whole claim to which it applies. It is not necessary to rehearse the same statutory argument for each specific theory of liability. Precise arguments certainly benefit the judicial process, but we are judges, not robots. Cf. Henderson *140 Op. at 132 ("Judge Tatel unrealistically parses the PA’s defense into discrete and seemingly unrelated arguments.”). Moreover, the Parsons family conceded that liability under the material support statute requires scienter as to the nationality of the victim, Oral Arg. 9:50-10:06, so they cannot argue they were unfairly prejudiced by the form of the Palestinian Authority's arguments.

. Judge Henderson notes the [Redacted] Declaration does not explicitly discuss the PA report as it does Qarmout’s statement. Henderson Op. at 129-30 n. 5. But [Redacted] failure to single out the report from the rest of the PA’s investigative file is hardly evidence that it is unreliable.

. Contrary to Judge Henderson’s implication, cf. Henderson Op. at 129 n. 3, the record contains not just an English translation, but the video clip of Dahlan’s statement itself, complete with Arabic audio. See Palestinian Media Watch, PA Security Forces Aided Ha-mas During Intifada, PMW, http://www. palwatch.org/main.aspx?fi=713&fld_id= 713&doc_id=864 (last visited July 22, 2011). Presumably the video and its translation could be authenticated at trial. See Tatel Op. at 133.

. That facts and law are cut from different cloth is evident in the general rule that parties may stipulate facts but not legal conclusions. See Weston v. Washington Metro. Area Transit Auth., 78 F.3d 682, 685 (D.C.Cir.1996). Likewise, on appeal parties may forfeit legal arguments but not facts.

. Judge Tatel cites one case in which he says we treated factual assertions properly raised as to one claim as though forfeited for purposes of another claim. Tatel Op. at 137-38 (citing Vickers v. Powell, 493 F.3d 186, 196 (D.C.Cir.2007)). Not so. In that Title VII case, we noted the plaintiff “never argued that the various discriminatory acts alleged in her hostile work environment claim ... were further evidence of pretext” in her retaliation claim. Vickers, 493 F.3d at 196. The relevant forfeiture was legal, not factual. Vickers never argued a legal theory under which prior acts, by employees other than the official who fired her, could prove pretext. We rightly declined to apply those properly asserted facts to a legal argument Vickers had never articulated. The present case is different: The Parsons family has consistently argued a legal theory (whoever planted the bomb needed the guards’ complicity) into which the allegedly forfeited fact (Qarmout planted the bomb) fits neatly.

. As Judge Tatel points out, facts alleged at summary judgment by the moving party are treated as "admitted” unless controverted by the non-moving party. Tatel Op. at 136-37 (citing D.D.C. Local Civ. R. 7(h)(1)). This only illustrates the principle that a party cannot rely on facts it has failed to timely assert, and that a party is bound by its admissions. But once controverted, a fact is controverted for all purposes. By the same token, a fact asserted for one purpose is asserted for all purposes. It either happened or it did not happen. The rule of constructive admission offers no support to Judge Tatel’s notion that a fact asserted in the context of one legal theory is forfeited as to another unless restated in the new context.

. Judge Tatel faults the Parsons family's reply brief for not correcting the Palestinian Authority's misimpression that the PA report was the only evidence relevant to the conspiracy claim. Tatel Op. at 136-37. I agree the family could have been clearer, but its reply brief does demonstrate the PA’s error by merging its treatment of material support and conspiracy into a single discussion about the sufficiency of the Qarmout evidence. Appellants' Reply Br. 9-12.

. The Palestinian Authority does not mention that Kolstad and the Restatement also allow punitive damages against a principal who "acts recklessly in employing the malfeasing agent” See Kolstad, 527 U.S. at 543, 119 S.Ct. 2118.

. See Petrochem Insulation, Inc. v. NLRB, 240 F.3d 26, 34 (D.C.Cir.2001) (deferring to the NLRB’s citation of a "company’s decision to seek treble damages as additional evidence of retaliatory motive” but noting that "had the suit not been so meritless — our view might be different” (citing Kline v. Coldwell Banker & Co., 508 F.2d 226, 235 (9th Cir.1974) (characterizing antitrust treble damages as punitive))); United States ex rel. Long v. SCS Bus. & Tech. Inst., Inc., 173 F.3d 870, 877 (D.C.Cir.1999) (characterizing treble damages under the False Claims Act as "a form of punitive damages that would be palpably inconsistent with state liability”); Fleming v. FTC, 670 F.2d 311, 314-15 (D.C.Cir.1982) (concluding that a civil antitrust suit for treble damages constitutes an official law enforcement purpose under §§ 6(f) and 21(b)(6) of the Federal Trade Commission Improvements Act of 1980 because such suits are not only "remedial and compensatory in nature” but also "punitive or prophylactic’’); see also PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 406-07, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (leaving for the arbitrator the question whether an arbitration agreement which precluded punitive damages also barred treble damages under RICO).

. The ATA’s legislative history confirms that the primary purpose of the statutory multiplier is to deter future acts of terrorism, not to punish the defendant's moral culpability. See Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts and Administrative Practice of the S. Judiciary Comm., 101st Cong. 34 (1990) (statement of Steven R. Valentine, Deputy Assistant Att’y Gen., Civil Division) ("[The ATA] provides a federal forum for any national of the United States to seek compensation in the form of treble damages for injuries resulting from acts of international terrorism”); id. at 85 (statement of Joseph A. Morris, President and General Counsel of the Lincoln Legal Foundation) C’[B]y its provisions for compensatory damages, treble damages, and the imposition of liability at any point along the causal chain of terrorism, it would interrupt, or at least imperil, the flow of terrorism’s lifeblood: money.”).