**Sheila ALFORD, Appellant**

v.

**PROVIDENCE HOSPITAL, Appellee.**

No. 13–7096.

United States Court of Appeals, District of Columbia Circuit.

June 20, 2014.

Donald M. Temple I, Esquire, Donald M. Temple, PC, Washington, DC, for Appellant.

Hubert W. Farrell, Eric William Gunderson, Esquire, Farrell & Gunderson, Columbia, MD, for Appellee.

Before: HENDERSON and MILLETT, Circuit Judges, and RANDOLPH, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. The court has afforded the issues presented full consideration and has determined that they do not warrant a published opinion. *See* Fed.

R.App. P. 36; D.C.Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the district court's order and judgment entered May 23, 2013, be affirmed.

Plaintiff-appellant Sheila Alford worked as both a secretary and a front-desk attendant at Providence Hospital from 1983 to 2011. An accident in 1991 left her paraplegic, requiring the use of a wheelchair for mobility. Following a hand injury in late 2009, Alford used leave guaranteed to her by the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*, and the District of Columbia's Family and Medical Leave Act (D.C.FMLA), D.C.Code §§ 32–501 *et seq.* Her return to work at the beginning of April 2010 was cut short by injuries to her head, shoulder, and neck when she fell while transferring from her car to her wheelchair. Although she was not yet fully recovered, Alford exhausted all of her leave under the FMLA and the D.C. FMLA by April 14th. Fortunately for Alford, her supervisor at Providence Hospital voluntarily extended her an extra sixty days of unpaid leave, as permitted by hospital policy. Alford returned to work on May 7, 2010, finding it unnecessary to use all sixty days of the additional leave given to her.

Seven months later, Alford reported suffering severe pain in her shoulder, and was diagnosed with shoulder and neck injuries. Those injuries left her out of work starting on December 3, 2010. Weight restrictions imposed by two doctors prevented her from lifting her wheelchair in and out of her car while she recovered. On both December 14, 2010, and January 3, 2011, doctors examining Alford cleared her to return to work, but imposed weight restrictions that prevented her from lifting her wheelchair in and out of her car.

Having determined that there was an operational need to have a person in Alford's position and that Alford could not transport herself to work, Providence Hospital decided on January 6, 2011 to terminate Alford, effective the next day.

Following her termination, Alford brought suit against the hospital alleging violations of the FMLA and the D.C. FMLA, retaliation for the exercise of her rights under both statutes, and common-law claims of intentional and negligent misrepresentation. Specifically, Alford alleges that LaToya Abbott, a registered nurse in the hospital's Occupational Health Department, told her to stay home from work in December and failed to inform the hospital's Human Resources personnel once doctors cleared Alford to return to work.[1]

The district court granted summary judgment in favor of Providence Hospital. We affirm. For each claim, Alford has failed to "make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C.Cir.2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

First, on this record, Alford's FMLA and D.C. FMLA claims are foreclosed as a matter of law. She concedes that she exhausted her rights to leave under those statutes in April 2010, seven months before her December injuries and eight months before her termination. Pltf.'s Statement of Genuine Issues of Material Facts in Dispute ¶¶ 1–5. Providence Hospital thus could not have denied or other-

---

1. Alford did not assert that Providence Hospital's termination decision or treatment of her in any way violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

wise interfered with her right to take leave under those laws because she had no such remaining right. Nor could Alford plausibly contend that the Hospital obstructed her return to work after using such leave because the Hospital welcomed her back to work in May 2010, and her employment continued for seven months without any alleged difficulties or interruptions.

Second, for similar reasons, the record forecloses her claim of retaliation. Alford was terminated more than eight months after she used the last of her protected leave and after an intervening period of seven months' work without even a hint of retaliatory activity. Quite the opposite, Providence Hospital went out of its way to accommodate and support her by voluntarily offering her an extra sixty days of leave to recuperate in April 2010. The record thus forecloses any plausible inference of retaliation based on temporal proximity. *See, e.g., Colburn v. Parker Hannifin/Nichols Portland Division,* 429 F.3d 325, 337–338 (1st Cir.2005) ("no inference of retaliatory motive" when a worker was terminated almost four months after first taking FMLA leave); *cf. Taylor v. Solis,* 571 F.3d 1313, 1322 (D.C.Cir.2009) (no inference of retaliatory motive possible when two and a half months passed between the exercise of Title VII rights and adverse employment action). And Alford has come forward with no other evidence even suggesting that the hospital had a retaliatory motive.

Third, Alford's own concession closes the door on her claim that Abbott engaged in intentional fraudulent misrepresentation by failing to inform the personnel making the termination decision that Alford could transport herself to work. A claim of intentional misrepresentation requires proof that, among other things, Abbott knew or was recklessly indifferent to Alford's ability to come to work and falsely represented

that fact with the "intent to deceive" the decisionmakers. *See In re Estate of McKenney,* 953 A.2d 336, 342 (D.C.2008); *Howard v. Riggs National Bank,* 432 A.2d 701, 706 (D.C.1981) (outlining the elements of an intentionally fraudulent misrepresentation claim).

Alford, however, conceded that, at the time that Hospital officials decided to terminate her, "Ms. Abbott's understanding based on her conversations with Alford [was] that she was still unable to transport herself to work." Pltf.'s Statement of Genuine Issues of Material Facts in Dispute ¶ 20 ("no genuine issues of material fact" concerning that question). Thus nothing in the record would permit a jury to find the knowledge and intent-to-deceive elements of the intentional misrepresentation claim.

Finally, the district court properly dismissed Alford's claim that Abbott negligently misrepresented to those making the termination decision that Alford could not return to work, and that she failed to pass along doctors' reports clearing Alford to work. The hospital's concern was with Alford's ability to get to work, not with her ability to perform once she arrived. Alford also argues that Abbott failed to read a report on the day she received it from one of Alford's doctors. But that report arrived on January 7, 2011—the day after the hospital decided to terminate Alford. Alford thus cannot establish any causal nexus or adverse reliance on that alleged misstep. *See generally Redmond v. State Farm Ins. Co.,* 728 A.2d 1202, 1207 (D.C. 1999) (outlining the elements of a negligent misrepresentation claim).

Moreover, while Alford argues that she was able to get to work, negligent omission relates only to information that the defendant had a duty to disclose. *See Redmond,* 728 A.2d at 1207. Alford makes no allegation, let alone identifies plausible evi-

dence showing, that Abbott, a non-supervisory nurse practitioner, had any duty to disclose information about Alford's alleged alternative sources of transportation to the Human Resources staff making the termination decision. *Compare Staub v. Proctor Hospital*, —— U.S. ——, ——, 131 S.Ct. 1186, 1193, 179 L.Ed.2d 144 (2011) (hospital liable for discriminatory termination when the ultimate decision-maker relied on biased information supplied by an employee with "supervisory authority," since "a supervisor is an agent of the employer").

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or for rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41.